## LEONHARD v. FLOOD.

## Opinion delivered April 28, 1900.

1. USURY—EVIDENCE.—Usury will not be inferred where from the circumstances the opposite conclusion can be reasonably and fairly reached. Thus, where the evidence shows that a broker who received a commission from the borrower for effecting the loan had been acting generally as the agent of the lender in assisting him to loan money, but in the particular transaction acted for the borrower, signing his note as surety and procuring an additional surety thereto, it will not be inferred that the commission was paid to the broker or the lender's agent, nor will the loan be rendered usurious thereby. (Page 164.)

2. ACKNOWLEDGMENT—INTEREST AS DISQUALIFICATION TO TAKE.—A surety on a note secured by mortgage has such an interest therein as will disqualify him from taking the mortgagor's acknowledgment. (Page 165.)

3. UNRECORDED MORTGAGE—VALIDITY.—An unrecorded mortgage is valid between the parties, and as against persons holding the property by voluntary conveyance. (Page 166.)

4. FRAUD—CONSIDERATION—BURDEN OF PROOF.—Where a debtor conveyed his property to his son, and to a corporation owned and controlled by his family, the circumstance is such as to raise a suspicion of fraud in

a suit by his creditors attacking the conveyance as fraudulent, and to cast upon him the burden of showing a consideration, nor are the deed's recitals competent to show a consideration. (Page 166.)

5. BURDEN OF PROOF—CONSIDERATION.—One who purchases property, knowing that it is subject to a valid but unrecorded mortgage, must show that his purchase was for a valuable consideration. (Page 168.)

Appeal from Arkansas Chancery Court.

JAS. F. ROBINSON, Chancellor.

### STATEMENT BY THE COURT.

Henry Flood and his wife, Catherine Flood, borrowed $2,000 from John Leonhard. To secure the payment of this loan, Edwin Pettit and J. F. Swanson signed and indorsed the note given by the Floods to Leonhard. In order to further secure the payment of the note, and to protect their sureties, the Floods executed and delivered to Leonhard a mortgage upon certain real estate owned by Mrs. Flood. This loan was obtained by the Floods for the purpose of equipping and operating a brick plant. The Floods afterwards conveyed a portion of the mortgaged property to the Flood Brick & Tile Company, a corporation, the stockholders of which consisted of Flood, his wife, and three sons. The remainder of the property they conveyed to Harry Flood, one of their sons. This action was brought to foreclose the mortgage, and to enforce a lien which the sureties, Pettit and Swanson, claimed to hold on certain brick manufactured by the Floods and sold to one Searan. The defendants Henry and Catherine Flood set up the defense of usury in the loan. The Flood Brick & Tile Company and Harry Flood, for their answer, alleged that they had purchased the property for a valuable consideration; that the mortgage had never been properly acknowledged and recorded, and was no lien on the property as to them. The defendant Searan denied that plaintiffs had any lien on the brick purchased by him. Plaintiffs replied to the answer and cross complaints of Harry Flood and the Flood Brick & Tile Company, and denied that they or either of them had paid any consideration for the property conveyed to them by the Floods, and alleged that these conveyances were without consideration, and fraudulently made

to cheat and defraud the creditors of the Floods, and asked that such conveyances be declared void as to them. The court found that the mortgage had never been properly acknowledged, and that the note and mortgage were usurious and void, and gave judgment in favor of defendants. Plaintiffs appealed.

*Parker & Parker,* and. *Norton & Prewett,* for appellants.

The evidence shows that no usury was charged. Pettit was not disqualified from taking the acknowledgments. 56 Ark. 511. Even without acknowledgment the mortgage would be good between parties. · Searan bought the bricks with notice of the charge on them in favor of the indorsers, and must be bound. 50 Ark. 314.

*Geo. O. Lewis,* for appellees.

Under the rule in this state the evidence here establishes usury. 51 Ark. 534; 51 Ark. 546; 54 Ark. 40; 54 Ark. 155; 57 Ark. 251; 63 Ark. 249; 62 Ark. 92. Pettit was an interested party, and was disqualified from taking the acknowledgments. 56 Ark. 511; 43 Ark. 420; 40 S. W. 599; 33 L. R. A. 332; 1 Am. & Eng. Enc. Law (2 Ed.), · 493. An unrecorded mortgage, or one not entitled to record on account of defective acknowledgment, is not binding on a third person, though he have actual notice of it. Sand. & H. Dig., § 5091. The burden of alleging and proving fraud was on appellant. **51 Ark.** 390; Bump, Fr. Con. § 611; 46 Ark. 542.

*H. A. & J. R. Parker,* for appellants, in reply.

On the question of usury, see 51 Ark. 534; *ib.* **546;** *ib.* 548; 54 Ark. 572; 63 Ark. 385; 57 Ark. 256. The mortgage is certainly valid as to Swanson. 42 Ark. 500. On the question of fraudulent sale, see **40 Mo. App. 664; 15 Pac.** 635; 8 Ark. 510; 43 Ark. 84; 23 Ark. 494; 55 Ark. 42.

RIDDICK, J., (after stating the facts.) We are of the opinion that the defense of usury has not been established by the evidence. Our law visits on a lender who contracts for usurious interest, however small, a forfeiture of his entire loan and the interest thereon. It follows from the plainest principles of justice that such a defense should be clearly shown

before the forfeiture is declared. For this reason, usury will not be inferred where, from the circumstances, the opposite conclusion can be reasonably and fairly reached. *Berdan* v. *Trustees,* 47 N. J. Eq. 8, 21 Atl. 40; Webb, Usury, p. 481. In this case it is claimed that Pettit acted as agent of Leonhard in making the loan, and that the Floods agreed to pay him for his services, in addition to the interest reserved in the note, and this made the loan usurious. The evidence shows that Pettit had been acting generally as the agent of Leonhard, assisting him to loan money and looking after his other interests. We must take it as true that he acted for Leonhard to a certain extent in making this loan to the Floods, for it is so stated in the complaint; but it is clearly shown that he also acted for the Floods. This is shown by his conduct when Leonhard, not being satisfied with the security offered by the Floods, refused to make the loan. Pettit then, in order to obtain the loan for the Floods, signed the note for the Floods, and also induced Swanson to sign it. Pettit and Swanson thereby became liable with the Floods for the payment of the note. This indisputable fact conclusively shows that Pettit did not act altogether as the agent of Leonhard in procuring the loan. He certainly did not sign the note as agent of Leonhard; for this would, in effect, be Leonhard becoming surety on a note to himself. The contract by which the Floods agreed to pay Pettit for his services recites that Pettit had negotiated a loan for them, secured in part by his indorsement of their note, for which services the contract states they were to pay him a specified sum, but they have paid nothing. They did not agree to pay him for services performed for Leonhard, but for services performed for them. The circumstances do not satisfy us that there was usury in the loan, and we are of the opinion that such defense should be overruled.

The complaint states, and the evidence shows, that the mortgage was made mainly to protect the sureties on the note of the Floods. Leonhard declined to make the loan on the mortgage security offered by the Floods. He made the loan on the credit of the sureties, Pettit and Swanson, and the mortgage was executed and delivered to him to protect the

sureties. The pleadings of both parties state this to be true. Under these circumstances, Pettit was directly interested in the mortgage given for his benefit, and the acknowledgment taken before him was void. This being so, the mortgage could not legally be recorded, and the record thereof was without effect. *Penn* v. *Garvin*, 56 Ark. 511.

But, though the acknowledgment was void, the mortgage was good between the parties, and valid against a voluntary conveyance; for, while an unrecorded mortgage, in this state, constitutes no lien as to third parties, still the mortgagor cannot relieve his property of a valid lien which exists on the property as to him by giving it away. As to one holding the property by a conveyance entirely voluntary, it would be presumed that the conveyance was made subject to the mortgage. Now, plaintiffs allege that the conveyance made by Henry and Catherine Flood to the Flood Brick & Tile Company and to Harry Flood were without consideration, and made to defraud the creditors of the Floods. A consideration is recited in each of these conveyances, but there is no other evidence thereof; and the question presented is whether the burden rested on the grantees to show a consideration for such conveyances, and, if so, whether the recitals in the deed, to which neither of the plaintiffs was a party, can be used as evidence against them. It has been several times decided by this court that when the creditors of a vendor attack his conveyance as fraudulent, and introduce proof making out a *prima facie* case of fraud against the vendor, the burden of showing a consideration is on the vendee, and that in such a case the recital in the deed is regarded as only *res inter alios acta*, and not competent to prove a consideration as against the creditor of the vendor. *Valley Distilling Co.* v. *Atkins*, 50 Ark. 289; *Foster* v. *Haglin*, 64 Ark. 505, 43 S. W. 763. An examination of these cases will show that, as to the vendor, in each of them a *prima facie* case of fraud had been made out by the evidence. The court, applying the law to the case in hand, held that the burden of showing a consideration was on the vendee. It was not called on to consider whether evidence tending to cast suspicion on the conveyance, though not sufficient to establish fraud

on the part of the vendor, would not put the burden on the vendee to show that there was some consideration for the conveyance. The court cannot be said to have expressed an opinion on that matter, for the question was not before it. Now, in this case it was not shown that Flood or his wife was insolvent at the time of the conveyances; but it was shown that they were in debt, and that there were many unpaid judgments against Flood. He and his wife could not borrow money on their own notes or on the mortgage offered by them, but were compelled to hire third parties to become sureties on their note in order to obtain a loan. After obtaining this loan, they sold the property mortgaged as security for the loan, in part to their son, and in part to a corporation of which Flood was president, and of which the only stockholders were himself, wife, and three sons. They have not paid the loan, but they and their vendees are now seeking to defeat the collection thereof on various grounds. The circumstances surrounding these conveyances to his son, and to a corporation owned and controlled by himself and family, are certainly sufficient to arouse suspicion and throw doubt upon them as legitimate transactions. We therefore think that the burden was on these vendees to show that their conveyances were based on a sufficient consideration. Whether or not there was such a consideration was a matter peculiarly within their knowledge, and when, under such circumstances, they offer no proof, the presumption arises that there was no consideration. There are cases that go further, and hold that, as against creditors of a grantor, his deed is regarded as voluntary until the payment of a consideration is shown. The rule of these courts is that a *prima facie* case is made for the party attacking the conveyance by showing that he was a creditor of the grantor at the time the deed was made, and the burden of showing a consideration is then cast upon party holding under the deed. "These decisions," says Mr. Jones in his work on Real Property, "tend to the suppression of fraud." *Prescott* v. *Hayes*, 43 N. H. 593; *Lipscomb* v. *McClellan*, 72 Ala. 151; Jones, Real Prop. § 310, and cases cited. We are not required to go so far as these cases go, but we do hold that, where the evidence not only

shows that the plaintiff was a creditor at the time of the conveyance, but the circumstances are such as to raise a suspicion of fraud, and cast doubt upon the legality of the transaction, the burden is on him holding under the deed to show a consideration.

Leaving out the question of fraud, our conclusion is supported in this case by another reason. Leonhard, by the note and mortgage, showed that he had a valid lien on the property as against Henry and Catherine Flood. The defendants, who claim as purchasers from them after the execution of the mortgage, must, in order to sustain their claim, show facts making such purchase superior to the rights of Leonhard, and to do this they must show a consideration for such purchase. The case of *Challis* v. *German National Bank*, 56 Ark. 88, is not in conflict with this ruling, for in that case the party claiming against the mortgagee proved a consideration, and there was no dispute on that point. As no proof was offered in this case tending to show a consideration for these conveyances except deeds, the recitals in which are not evidence against plaintiffs, we must presume that these conveyances were voluntary, and the grantee therein held subject to the lien of the mortgage.

As to the claim against Searan, we think the chancellor rightly held that plaintiffs have no lien on the bricks sold by the Floods to him. The judgment as to him is affirmed. In other respects it is reversed and remanded, with an order to enter a decree forclosing the mortgage, and for other proceedings not inconsistent with this opinion.

BUNN, C. J. (dissenting). I concur in the conclusion of the court that this case should be reversed, but on a different ground from that upon which the court bases its opinion. It is, perhaps, not well to declare a conveyance fraudulent without some more direct evidence than is here adduced against the deed to Henry Flood and others, although the suspicions are great, and the inference to be drawn from the relation of the parties and other circumstances is more or less morally convincing. The objections to the mortgage from John Flood and wife to Leonhard to secure the note of $2,000, upon which Edwin Pettit and Swanson were indorsers, is of the

most technical kind, and utterly without reason to support it. It appears, or is alleged, that Pettit was a notary public, and took the acknowledgment of John Flood and wife to the mortgage; and the objection and sole objection is that, being an indorser on the note, he was disqualified to take the acknowledgment. We have had but two cases, so far as I have been able to recall, on that subject: First, *Green* v. *Abraham*, 43 Ark. 420, where the officer was a party to the instrument acknowledged; and *Penn* v. *Garvin*, 56 Ark. 511, 20 S. W. 410, where this court said: "A notary public is not disqualified to take an acknowledgment to a mortgage by reason of the fact that he had acted as agent for the mortgagor in obtaining the money which the mortgage was given to secure." In other words, the courts will determine first whether or not the officer has any pecuniary interest in the instrument acknowledged, and then whether that interest, under the circumstances, could possibly influence his conduct to the detriment of others interested. There is no plea of *non est factum* against the mortgage; there is no contention that it was not executed as it purports to be, nor that the mortgagor did not have Pettit to take the acknowledgment voluntarily; and the certificate of acknowledgment is in due form. In other words, the notary public did his whole duty in the premises, and nothing but his duty. The only objection is that, as he was remotely interested in the mortgage, the same inferentially having the effect of being for his benefit, or might be so, he was not competent to take and certify the acknowledgment. It seems, in a case like this, that the officer's personal interest and his duty as an officer perfectly coincided, and yet the theory is that in some way his personal interest did influence or might have influenced his official conduct. It could only have influenced him to do right as an officer,—take the acknowledgment properly, and certify it in form. Is the rule so inexorable that it will be enforced under circumstances where it has not one particle of evidence to sustain it? I think not. Most of the cases cited in support of the rule are cases in which the officers are parties to the instruments. The rule ought to go no further, where everything appears fair on the face of the papers. In every case going further than that the extraneous facts alleged

to show disqualification should not only be established, but shown to be such as show some opportunity for the officer to take advantage of his official character to inflict an injury on some of the parties concerned. His act is a mere ministerial act, defined and prescribed, and in the doing of which, or the manner of doing which, he has no discretion, but must follow the formula. The only case I have been able to find which definitely carries the rule beyond the parties to the instrument is *Wilson* v. *Traer*, 20 Iowa, 231, and that has little or no support, even from the authorities cited. I think, in many cases, and under the circumstances of many cases, in the very nature of things, it is impossible to say that an officer's interest does or can influence him to take and certify a wrong acknowledgment, and when that appears, as in the case at bar, the officer ought not to be regarded as disqualified.˙ The contention is that this defect invalidates the recording of the mortgage, and thus there is no notice to third parties.