TYSON *v.* MAYWEATHER.

Opinion delivered March 1, 1926.

1.  MORTGAGES—CONSTRUCTION OF INSTRUMENT—EVIDENCE.—Evidence *held* to sustain finding that plaintiff's ancestor executed a mortgage, and not a deed absolute, to his grantee under whom defendant claims.

2.  MORTGAGES—LIMITATION OF ACTIONS—INDORSEMENT OF PAYMENTS ON RECORD.—Under Crawford & Moses' Dig., § 7408, requiring that, as to third parties, payments on a mortgage be indorsed on the record by the mortgagee or trustee and attested by the clerk, *held* that, as between the mortgagor and mortgagee, it is not necessary that payments on the mortgage debt be indorsed on the record, in order to stop the running of the statute of limitation.

3.  MORTGAGES—DESCRIPTION OF LAND.—Description in a mortgage of land as being in "section 35-13-17" is sufficient to describe land in Ouachita County, Arkansas, where it is clear from a reading of the entire instrument that the land is located in that county.

4.  MORTGAGES—EXECUTION OF POWER OF SALE—POSSESSION.—In the exercise of a power of sale by a trustee in a mortgage, it is unnecessary for the trustee to take possession of the land before making a sale.

Appeal from Ouachita Chancery Court, Second Division; George M. LeCroy, Chancellor; reversed.

*Gaughan & Sifford,* for appellant.

*C. T. Cotham* and *Houston Emory,* for appellee.

HUMPHREYS, J.   This suit was brought in the chancery court of Ouachita County by appellees, who are the widow and heirs at law of E. L. Mayweather, deceased, against appellant, to cancel a deed of trust or mortgage executed by E. L. Mayweather and his wife, Mary Mayweather, to J. W. Reynolds, trustee, on the 8th day of May, 1924, upon a 35-acre tract of land and certain personal property, to secure a note of $364.54, with interest thereon, and all other indebtedness due by the mortgagors to the beneficiary in the mortgage, also to cancel two trustee's deeds executed to T. S. Tyson by the trustee in foreclosure proceedings under said mortgage, and a deed from T. S. Tyson to one of the appellants, Houston Oil Company of Texas; also to recover damages from said appellants for cutting timber and destroying fences on the land, praying in the alternative that appellees be permitted to redeem the land by paying the amount due under the mortgage if the court should find that there was a *bona fide* debt existing and secured by said mortgage.   The muniments of title aforesaid under which Houston Oil Company of Texas claimed said 35-acre tract of land were assailed in the complaint for the following alleged reasons:   First, the instrument attempted to be foreclosed was invalid, and not intended to be executed as a mortgage; second, bar of debt by the statute of limitations; third, insufficient description of the land in the instrument; fourth, failure of the trustee to take possession of the land before the foreclosure; fifth, fraudulent conduct on the part of Tyson, which prevented appellee from redeeming the land from the sale within the statutory period; and sixth, trustee sale invalid on account of irregularities in making same.

Appellants filed an answer denying *seriatim* the material allegations in the complaint.   The cause was submitted to the court upon the pleadings and testimony adduced by the respective parties, which resulted in a decree allowing all the appellees except Peter May-

weather to redeem the land from the foreclosure sale under the mortgage by paying the amount of $508.94 to the Houston Oil Company of Texas, or into the registry of the court, same being six-sevenths of the principal and interest due upon the mortgage at the time of the trial, from which is this appeal.

The first contention for an affirmance of the decree is that the instrument executed by E. L. Mayweather and Mary Mayweather, parties of the first part, to J. D. Reynolds as trustee, party of the second part, and J. W. Reynolds, party of the third part, is and was intended as a deed absolute and not a deed of trust or mortgage. The instrument is lengthy, and for that reason will not be set out in this opinion. It purports on its face to be a conditional sale of real estate, the condition being that, if the party of the first part should pay the note and other indebtedness they owed the party of the third part, at the time the note became due, the deed should be void. The instrument contained a provision for the sale of the real estate to pay the indebtedness, in case default was made in the payment thereof. It is true that the signatures of the Mayweathers were made by mark without being attested by a witness, but they acknowledged executing and signing the instrument before a notary public, which answered the requirement of law in this respect. It is also true that the Mayweathers separated and divided their real estate, and, pursuant to the division, E. L. Mayweather conveyed the south forty of the eighty acres upon which they resided to Mary Mayweather, his wife, with the understanding that she would convey the north forty of said tract to him. This agreement, however, could not and did not have the effect of converting the instrument in question, which has all the ear-marks of a mortgage, into an absolute deed. Mary Mayweather testified, on direct examination, that she thought she was executing a deed when she and her husband executed the instrument in question, but on cross-examination she admitted that she may have executed a mortgage. A careful reading of her evidence, and the other testimony in the case,

has convinced us that the Mayweathers intended to execute a mortgage or deed of trust to J. D. Reynolds, as trustee, to secure their indebtedness to J. W. Reynolds.

The next contention for an affirmance of the decree is that the debt was barred by the statute of limitations at the time of the foreclosure. The debt was due November 15, 1914. The following credits appeared on the margin of the record where the instrument was recorded:

"Credit on this D. of T. March 8, 1915, $27.33; January 6, 1916, $46.45; November 15, 1916, $36.45; November 20, 1917, $36.45."

It is argued that these credits on the margin of the record were not signed or attested in the manner provided by § 7408 of Crawford & Moses' Digest. The section of the statute referred to was enacted for the purpose of giving notice to third parties of payments made on the mortgage indebtedness. As between mortgagor and mortgagee, it is not necessary that payments be indorsed on the margin of the record to fix a new date for the statute of limitations to begin to run. The widow and heirs of the mortgagor are not third parties. Their rights are derivative, and they stand in the place of the mortgagor. The payment itself, as between the parties, fixes a new date for the statute of limitations to begin to run. The trial court found that the payment of $36.45 was made upon the note on November 20, 1917. This was within five years next before the foreclosure under the power in the mortgage. We have read the evidence carefully, and cannot say that the finding of the chancellor in this particular was against a clear preponderance of the testimony. E. L. Mayweather was alive at the time the payment was made, and, according to the testimony of Tyson, either he or one of the heirs made the payment. If made by one of the heirs, the conclusion is irresistible that it was authorized by E. L. Mayweather.

The next contention for an affirmance of the decree is that the description in the mortgage is void for uncertainty. The argument is made that the description is

insufficient because it was not stated that the land is in Ouachita County. The description as it appears in the mortgage is as follows: "The north 40 acres of land in the W½ of the SE¼ section 35-13-17, less a five-acre strip off the west side of the north part, sold to the Ouachita Valley Fair Association, being seventy-five acres, land in section 35-13-17."

The description itself recites that a five-acre tract in the forty was sold to the Ouachita Valley Fair Association. The mortgage recites that the land is the homestead of the mortgagors. It also recites that the cotton to be raised by them in Ouachita County, State of Arkansas, during the year 1914, is included as a part of the security for the debt. It also recites that E. L. Mayweather "covenants with the trustee that he has already planted (or will plant) in cotton 26 acres, and in corn 22 acres of land, in the county and State aforesaid." The mortgage was acknowledged before a notary in Ouachita County, and recorded in said county. By reading the entire instrument, the conclusion is irresistible that the land in question is located in Ouachita County, State of Arkansas. Having determined that the land was located in said county and State, by the provisions contained in the mortgage, it follows as a necessary implication that "section 35-13-17" means section 35, township 13 south, range 17 west, which renders the description definite and certain. *Rogers* v. *Magnolia Oil & Gas Co.,* 156 Ark. 103.

The next contention for an affirmance of the decree was the failure of the trustee to take actual possession of the land before selling same under the power in the mortgage. It is true that the power in the mortgage provides for an entry and sale of the land in case of default in the payment of the indebtedness. Under the law of this State, a mortgagee has the option of taking the possession of the land in case of default and paying the indebtedness out of the rents and profits, or, instead thereof, to sell the equity of redemption under the power

to satisfy the debt. In the exercise of the latter option it is unnecessary for the mortgagee to enter before the sale. The purchaser at the sale has the right to do this after obtaining his deed.

The next contention for an affirmance of the decree is that Tyson, to whom the note and mortgage had been assigned by the trustee, practiced fraud upon one of the heirs, which prevented them from redeeming the property. It is claimed that he agreed to telephone one of the heirs before selling the land under the power in the mortgage. This was denied by Tyson, and he is strongly corroborated by the other testimony tending to show that he was more than lenient with the heirs and the widow, in extending time to them on various occasions. The evidence is insufficient to sustain the allegations of fraud.

The next and last contention for an affirmance of the decree is because of alleged irregularities in making the sale of the land under the power contained in the mortgage. Numerous irregularities are suggested, each of which we have carefully considered, but all are without merit. It would extend this opinion to great length to write out the reasons for our conclusions. Suffice it to say that the mortgage was foreclosed in accordance with the law.

In view of our conclusions upon the whole case the decree must be reversed, and the cause remanded with directions to render a decree in favor of appellants. It is so ordered.