SCHAEFER v. BAKER.

Opinion delivered April 21, 1930.

Jonas F. Dyson, for appellant.

Ross Mathis, for appellee.

SMITH, J. Isaac J. Brittingham and Mary, his wife, executed a deed of trust on a tract of land in Woodruff County to secure the payment of the following note:

"$1,972                     Hailey, Idaho, October 1, 1913.

"Five years after date we promise to pay to the order of W. W. Wallace nineteen hundred and seventy-two ($1,972) dollars, payable at Brinkley, Arkansas. Value received with interest at 6 per cent per annum. Interest payable semi-annually.

(Signed)    "Isaac Brittingham
(Signed)    "Mary I. Brittingham

"Due Oct. 1, 1918
"No. 46."

The following indorsements appear on the back of the note:

"Interest paid to April 1, 1914
"Interest paid to Oct. 1, 1914
"Interest paid to April 1, 1915
"Interest paid to Oct. 1, 1927
"Assigned to J. R. Baker
"Without recourse.
(Signed) "W. W. Wallace."

After the execution of the note and the deed of trust securing it, Mrs. Brittingham died, and on September 20, 1923, Mr. Brittingham also died. He was survived by Mrs. Della Brittingham Schaefer, his only child and sole heir at law, whose husband, William Schaefer, qualified as administrator of Mr. Brittingham's estate. There were only a few debts, and these were paid without having been probated; indeed, there appears to have been no necessity for the administration, and the first settlement was filed by the administrator about the time of the institution of this suit.

The note was purchased by J. R. Baker, who filed suit January 21, 1928, to foreclose the deed of trust securing it, and an answer was filed, in which it was alleged that the note was barred by both the statute of limitations and the statute of nonclaim. No attempt was made to enforce the payment of the note as a demand against Mr. Brittingham's estate, and the statute of nonclaim has therefore no relevancy. *Rhodes* v. *Cannon*, 112 Ark. 6, 164 S. W. 752; *England* v. *Spillers*, 128 Ark. 31, 193 S. W. 86; § 7408, C. & M. Digest. The question in the case is whether the note was barred by the statute of limitations at the time of the institution of the suit.

The deposition of Mr. Wallace, the payee in the note, was taken upon interrogatories, and the questions asked and the answers given do not fully develop the

facts in regard to the payments of interest. In direct interrogatory No. 4 he was asked this question: ''It appears that various interest payments were credited on the note secured by the deed of trust, the last of these interest payments having been made in October, 1927. Was the interest in fact paid on the note up to October 1, 1927?'' and the answer ''Yes'' was given to this question, and no other explanation was made. October 1, 1927, was apparently the approximate date of the assignment of the note to the plaintiff Baker, and it is insisted that, as the last preceding indorsement of the payment of interest was on April 1, 1915, the note was then barred by the statute of limitations.

The presence or absence of the indorsement of credits of interest or other payments on the back of the note is not conclusive of the fact that the payments were or were not made. As was said in the case of *McAbee* v. *Wiley,* 92 Ark. 247, 122 S. W. 623, ''the proof of a payment on indebtedness, and of the indorsement of same upon the written evidence of that indebtedness may be made in the same manner as the proof of any other fact. It may be made directly, or by circumstances, or by the admissions of the defendant. It is actually the fact of the payment that tolls the statute, and not the indorsement; the indorsement is only a memorandum, or at most an evidence, of such payment * * *.'' The fact, therefore, that no payments of interest were indorsed between April 1, 1915, and October 1, 1927, is not conclusive of the fact that there were no intervening payments. The last indorsement is not merely that an interest payment was made on October 1, 1927, but is that the interest on the note was paid to that date, and the brief answer of Mr. Wallace to the interrogatory quoted above is to the effect that the interest was paid to that date.

The testimony taken at the trial from which this appeal comes, and which we shall briefly review, supports the finding that the note was not barred at the

time of Mr. Brittingham's death in 1923, and that, if so, his heir, Mrs. Schaefer, did not intend to interpose that defense, but, on the contrary, recognized the validity of the note and expressly assumed its payment.

The testimony shows the amount of interest paid after Mr. Brittingham's death, and that these payments were sufficient only to pay the current interest. If, therefore, the indorsement made by Mr. Wallace that the interest was paid to October 1, 1927, was true, payments must have been made by Mr. Brittingham in his lifetime, as the subsequent payments paid only the interest accruing after his death up to October 1, 1927.

It is not contended that any payments were made after Mr. Brittingham's death in excess of the current interest; in fact, it is denied that Mrs. Schaefer paid even this; and this question of fact is really the controlling question in the case.

The insistence is that the debt was barred when Mr. Brittingham died, and that the payments made by Mr. Schaefer, the husband of the sole heir, were made as administrator of the estate, and not for his wife as her agent, and that the administrator could not revive a note already barred by the statute of limitations.

There is certainly a question of fact as to whether the note was barred at the time of Mr. Brittingham's death, and we think the testimony supports the finding that Mrs. Schaefer agreed to pay the note, and the statute of limitations could not have run between the date of that agreement, and the date of the institution of this suit.

This suit was brought only for the purpose of foreclosing the deed of trust securing the note, and there is no attempt to enforce the demand against Mr. Brittingham's estate or against his heir personally.

Did Mrs. Schaefer agree to pay the note, thereby tolling the statute of limitations?

A few days after Mr. Brittingham's death Mrs. Schaefer wrote the following letter:

"Hunter, Arkansas, October 2, 1923.

"Mr. W. W. Wallace,

"Hailey, Idaho,

"Dear Sir: I am very sorry to have to write you the sad news that my father, Mr. Isaac J. Brittingham, passed away on September 23, 1923, his death was caused from cancer of the liver, his last hours were peaceful, am glad to say.

"I believe father's interest is due, but I am not in a position now to pay and won't be for about 30 days, please advise me what to do.

"From his daughter in sorrow,

(Signed)   "Mrs. Wm. H. Schaefer,
"Hunter, Arkansas."

We think the purport of this letter is unmistakable, and is to the effect that Mrs. Schaefer recognized the binding obligation of her father's note to Mr. Wallace's order, and of her intention to pay it. The letter is, in fact, a plea for indulgence in this respect. Interest payments were later made by Mr. Schaefer, the administrator, but they were not made by him as administrator. The testimony is to the effect that Mr. Wallace always wrote to Mrs. Schaefer about the interest, and that he wrote her one or more letters in regard to each semiannual payment, and, while these letters were answered by Mr. Schaefer, we think he was acting as agent of his wife, and not as administrator of the estate of her father. One of the letters written by Schaefer was signed both by himself and Mrs. Schaefer, and while he testified that she did not direct him to sign her name to this letter we think he was her agent in doing so.

We are of the opinion that the testimony warrants the finding that there was a promise to pay by Mrs. Schaefer, and that payments were made by her through her husband as her agent, and not by him as administrator of her father's estate. The note was never filed for probate, and none of the checks remitted in payment of interest was signed by Mr. Schaefer as administrator.

In fact, some of the checks used by him in paying interest were checks to his order, which were indorsed by him.

In the case of *McAbee* v. *Wiley, supra,* it was said that "a payment made by an agent is as effectual to suspend the statute as when made by the party himself," and 25 Cyc. 1384 is cited in support of the principle stated. The text cited reads as follows: "Payment is effectual to suspend the statute when made by an agent specially authorized to make it; or by a general agent and manager of the debtor's business, even where the payment is made on a debt owing by the principal to him. * * * Payment made by one acting as agent of an estate will not revive the debt of the ancestor against the heirs." As we have said, we find the facts to be that Mr. Schaefer made the payments as agent of the heir, and not as administrator of the estate.

In the case of *Morris* v. *Carr,* 77 Ark. 228, 91 S. W. 187, we quoted from the Supreme Court of the United States in *Shepard* v. *Thompson,* 122 U. S. 231, 7 S. Ct. 1229, as follows: "The statute of limitations is to be upheld and enforced, not as resting only on a presumption of payment from lapse of time, but, according to its intent and object, as a statute of repose. The original debt, indeed, is a sufficient legal consideration for a subsequent new promise to pay it, made either before or after the bar of the statute is complete. But, in order to continue or revive the cause of action after it would otherwise have been barred by the statute, there must be either an express promise of the debtor to pay the debt, or else an express acknowledgment of the debt, from which his promise to pay may be inferred. A mere acknowledgment, though in writing, of the debt as having once existed is not sufficient to raise an implication of such a new promise. To have this effect, there must be a distinct and unequivocal acknowledgment of the debt as still subsisting as a personal obligation of the debtor."

Here Mrs. Schaefer took title by inheritance to an incumbered piece of real estate, and she not only ac-

knowledged the validity of the lien against the land, but promised to discharge it, and, pursuant to this promise, made several payments, the last of which was much less than five years before the institution of this suit. The cause of action was therefore not barred by the statute of limitations. *A. R. Bowdre & Co.* v. *Pitts,* 94 Ark. 613, 128 S. W. 57; *Goodman* v. *Pareira,* 70 Ark. 49, 66 S. W. 147; *Tyson* v. *Mayweather,* 170 Ark. 660, 281 S. W. 1.

The decree of the court ordering the foreclosure of the deed of trust is therefore correct, and it is affirmed.