Kansas City Life Insurance Company v. Marsh.

4-5207                                              121 S. W. 2d 81

Opinion delivered November 7, 1938.

*L. R. Williams* and *A. P. Patton,* for appellant.

*Richardson & Richardson, Smith & Judgkins* and *W. E. Beloate,* for appellee.

McHANEY, J. Appellant is the owner of certain promissory notes aggregating $600 all made, executed by J. F. Marsh and wife, Appellee Alice Marsh, and delivered December 6, 1924, some of which for $30 each became due and payable semi-annually, the first June 1, 1925, and the last note for $330 became due December 1, 1929. All were secured by a mortgage on lot 1 in block 55 in Gibson & Boas Addition to the town of Hoxie, Arkansas. It became the owner of said notes and mortgage by purchase and assignment from the Commissioner of Insurance of the State of Missouri as a portion of the assets of the insolvent Continental Life Insurance Company. J. F. Marsh, one of the joint makers of said notes and mortgage died in November, 1936, leaving surviving him his widow, appellee Alice Marsh, and appellees Russell Marsh and Helen Stone as his sole and only children and heirs at law.

On May 15, 1937, the widow and said heirs at law conveyed said property by quit claim to the appellee Mary Katherine Richardson, wife of appellee, Roy Richardson, who was the attorney for the Marshes in an effort to settle and compromise the above mentioned indebtedness to appellant, for an expresed consideration of $1 paid to each grantor. Said deed was recorded May 21, 1937, and on May 22, 1937, appellee Mary Katherine Richardson conveyed the same property to appellee, Jay H. Myers, for an expressed consideration of $650 paid. Prior to his death, towit, on March 28, July 3, and August 10, 1936, said J. F. Marsh made three payments on said indebtedness of $5 each, under agreement to make monthly payments of $5 each until said indebtedness was paid in full which was made in November, 1935, with the Commissioner of Insurance and the indebtedness reduced to $350 con-

tingent upon such monthly payments being made. Under date of November 24, 1936, shortly after the death of J. F. Marsh, appellee Roy Richardson wrote appellant, making inquiry as to the smallest amount of cash it would accept in settlement of the loan. Appellant replied under date of November 25, indicating that the principal had been reduced to $350, but, with taxes advanced by it and with interest added, the total amount then due was $630.-61, which it would acept in full settlement as of December 1, 1936. On November 27, said Richardson wrote appellant that J. F. Marsh had died on November 21, and that he was representing his widow, said appellee Alice Marsh, in the matter of her husband's estate; that the amount should not be so large as the statement indicated; that she should not be required to pay more than $350, plus taxes advanced by the Continental Life, plus interest on the whole from November 1, 1935, the date of the agreement with the Commissioner of Insurance, less the payments made by Mr. Marsh, and that settlement on that basis could be arranged. Appellant in substance accepted said offer. Nothing further was done at that time, but appellant was advised by letter from an abstractor at Walnut Ridge that Roy Richardson had purchased the property and asking that the abstract be sent either to it or Richardson to be brought down to date. Appellant sent the abstract to Richardson on May 1, 1937, and advised him that foreclosure would follow unless same was paid at an early date. On May 20, Richardson replied offering $400, to which appellant replied agreeing to take $500 which Richardson declined to pay and finally on May 27 , Richardson wrote appellant withdrawing the $400 offer.

To a complaint seeking a foreclosure of said mortgage which alleged all the above facts and in addition that a house on said lot had been removed by Roy Richardson, and that all the appellees were guilty of fradulent conduct in the taking of said conveyance from the Marshes and in making the conveyance to said Myers, and that said conveyances were without consideration, made for the fraudulent purpose of defeating appellant

in the collection of its debt, and should be canceled, appellees demurred because the complaint showed on its face the cause of action was barred. The court sustained the demurrer. Appellant amended its complaint in particulars not deemed necessary to set out, and the demurrer was again renewed, sustained and the cause of action dismissed. The case is here on appeal.

We think the court erred in sustaining the demurrer. The complaint alleged and the demurrer admitted that the deed from Mrs. Alice Marsh and the Marsh heirs to Mary Katherine Richardson, as also the deed from the latter to Jay H. Myers, were. voluntary conveyances, made without consideration and with the fradulent intent on the part of all appellees to defeat appellant in the collection of its debt, and that said deeds should be canceled. It also alleged that the original mortgagor, J. F. Marsh, made a new agreement in November, 1935, for the payment of said indebtedness, by which he agreed to pay it off at the rate of $5 per month and that he actually made three payments thereon, one in March, another in July and another in August, 1936, which served to make a new date from which the statute of limitations would run. This was an oral agreement, but it was partly performed which takes it out of the Statute of Frauds.

But appellees invoke the provisions of § 9465 of Pope's Digest which provides that in suits to foreclose mortgages etc. it shall be a sufficient defense that they had not been brought within the period of limitation prescribed by law for suit on the debt (notes 5 years) or liability for the security of which they were given. "Provided, when any payment is made on such existing indebtedness, before the same is barred by the statute of limitation such payment shall not operate to revive said debt, or to extend the operations of the statute of limitation with reference thereto, so far as the same affects the rights of .. . . third parties, unless the mortgagee, trustee or beneficiary shall, prior to the expiration of the period of the statute of limitation, indorse a memorandum of such payment with date thereof on the margin of the record" etc. This statute was enacted for the protection of the parties therein described including

"third parties", that is, strangers to the original transaction. But heirs and persons holding under voluntary conveyances are not third parties.

In *Leonhard* v. *Flood,* 68 Ark. 162, 56 S. W. 781, this court held that an unrecorded mortgage is valid between the parties, and as against persons holding the property by voluntary conveyance. In *Western Tie & Timber Co.* v. *Campbell,* 113 Ark. 570, 169 S. W. 253, Ann. Cas. 1916C, 943, the above holding was approved and it was there said: "This is obviously so, because the registration statute is not intended to apply between the parties to a mortgage or to a grantee under a voluntary conveyance." It was further held in *Leonhard* v. *Flood, supra,* that where the evidence not only shows that the plaintiff was a creditor of the grantor at the time of the conveyance, but the circumstances are such as to raise a suspicion of fraud and to cast doubt upon the legality of the transaction, the burden is on him holding under the deed to show a consideration, and the recitals in the deed are not competent for that purpose.

We have many times held that where no marginal endorsements of payments on the record within the statutory period are made, the instrument becomes in effect an unrecorded mortgage, and is binding as between the parties. *Morgan* v. *Kindrick,* 91 394, 121 S. W. 278, 134 Am. St. Rep. 78; *Armstrong* v. *Armstrong,* 181 Ark. 597, 27 S. W. 2d 88; *Bank of Mulberry* v. *Sprague,* 185 Ark. 410, 47 S. W. 2d 601. In *Morgan* v. *Kindrick, supra,* it was held, to quote a syllabus, that: "A conveyance of mortgaged property by the mortgagor to a third party with a fraudulent purpose of defeating the mortgage, and without an actual and *bona fide* consideration, would not defeat the lien of a valid mortgage, although unrecorded."

It, therefore, follows that the mortgage in question, by reason of the failure to make indorsements of payments on the margin of the record, became an unrecorded mortgage, and, like an unrecorded mortgage, was good between the parties if payments were made that would keep it alive. The complaint so alleges and the demurrer admits them. But, say appellees, these payments were made after the bar of the statute, that all the notes were

more than 5 years past due in 1936. This is true, but Mr. J. F. Marsh evidently did not desire to take advantage of the statute of limitations or to plead it, and made the payments which had the effect of reviving the instruments as between him and appellant. To be availing as against third parties, such payments would have to be made within the period of the statute and indorsed on the record within the period, but not so as between the parties. When Mr. Marsh died, his widow and heirs at law took the same title he had, and the mortgage was valid and binding as to them just as much so as to him. His heirs were not third parties. In *Tyson* v. *Mayweather*, 170 Ark. 660, 281 S. W. 1, we said: "It is argued that these credits on the margin of the record were not signed or attested in the manner provided by § 7408 of Crawford & Moses' Digest. The section of the statute referred to was enacted for the purpose of giving notice to third parties of payments made on the mortgage indebtedness. As between mortgagor and mortgagee, it is not necessary that payments be indorsed on the margin of the record to fix a new date for the statute of limitations to begin to run. The widow and heirs of the mortgagor are not third parties. Their rights are derivative, and they stand in the place of the mortgagor. The payment itself, as between the parties, fixes a new date for the statute of limitations to begin to run."

Another contention of appellees which cannot be sustained is the application of the three $5 payments as shown in exhibit C to the complaint, filed in response to a motion to make more definite and certain by setting out by whom they were made, the amount of each payment and upon which of the notes they were credited. In making up the itemized statement, various items of interest on each note, insurance premiums, taxes, principal of the notes and recording fees were shown. One item was for taxes paid 3-6-36 . . . $87.89. Less the three credits above mentioned of $15, leaving a balance of $72.89 which was extended in the column of the charge items. It is contended that this shows a payment on taxes only and not on the notes, and, therefore, there was no revival of the debt. We cannot agree that such is the

effect, but are of the opinion, that these payments should be treated as payments on the whole debt existing at that time, including interest, taxes, insurance, etc., all secured by the mortgage along with the notes. In *Shaefer* v. *Baker*, 181 Ark. 620, 27 S. W. 2d 83, we said: ''The presence or absence of the indorsement of credits of interest or other payments on the back of the note is not conclusive of the fact that the payments were or were not made. As was said in the case of *McAbee* v. *Wiley*, 92 Ark. 245, 122 S. W. 623, 'the proof of a payment on indebtedness, and of the indorsement of same upon the written evidence of that indebtedness may be made in the same maner as the proof of any other fact. It may be made directly, or by circumstances, or by the admissions of the defendant. It is actually the fact of the payment that tolls the statute, and not the indorsement; the indorsement is only a memorandum, or at most an evidence of such payment' . . .''

It necessarily follows from what we have said, that the court erred in sustaining the demurrer. The decree is reversed and the cause remanded with directions to overrule the demurrer, and for further proceedings according to law, the principles of equity and not inconsistent with this opinion.