TUCKER *v.* ATKINSON.

4-9659                                    245 S. W. 2d 388

Opinion delivered January 28, 1952.

*Osborne W. Garvin,* for appellant.

*Rose, Meek, House, Barron & Nash,* for appellee.

ED. F. McFADDIN, Justice. The questions presented relate to agency, limitations, and the effectiveness of

marginal endorsements made in alleged compliance with § 51-1103 Ark. Stats.

On March 6, 1940, Mrs. Lidie Atkinson executed her four notes to O. D. Tucker, Sr., totalling $1,500, all due March 6, 1943; and as security for said notes, Mrs. Atkinson executed to O. D. Tucker, Sr., a mortgage on a house and lot in Little Rock. Mrs. Atkinson lived in Conway, and the Little Rock house was then (and had been since 1913) occupied by her step-son, Sherman Atkinson, who handled the entire loan transaction with Tucker. All Mrs. Atkinson did was to sign the papers and deliver them to Sherman Atkinson for consummation of the loan, the proceeds of which went to improve the mortgaged property. Sherman Atkinson made payments on the principal and interest of the mortgage indebtedness, on dates and in amounts as follows:

| | |
|---|---|
| March 6, 1940 | $250.00 |
| Sept. 6, 1940 | 37.50 |
| Mar. 6, 1941 | 37.50 |
| Dec. 5, 1941 | 56.25 |
| Apr. 3, 1942 | 37.50 |
| Sept. 25, 1942 | 37.50 |
| Oct. 7, 1948 | 25.00 |

The mortgagee, O. D. Tucker, Sr., died testate, and the appellants are his executors. Appellant, Oren D. Tucker, in his capacity as one of the executors of his father's estate, on February 17, 1950, made, on the margin of the record where the Atkinson-Tucker mortgage was recorded, the endorsement showing the said payment of October 7, 1948. It will be observed that the notes were due on March 6, 1943, and so they would be barred by the 5-year Statute of Limitation, even as to Mrs. Atkinson, unless the aforesaid payment of $25, made by Sherman Atkinson, on October 7, 1948, was made by him as the authorized agent of his stepmother. Sherman Atkinson died Apr. 15, 1950; and Mrs. Atkinson, in her answer filed July 14, 1950, and also in her deposition in this case, denied all such agency of Sherman Atkinson to act for her in making such payment. This denial poses the first point to be hereinafter discussed.

. On February 18, 1950, (one day after said marginal endorsement) there was executed a conveyance of the property herein, from Mrs. Lidie Atkinson, to her son, Paul Atkinson, Trustee.[1] Paul Atkinson claims that he is a "third party" within the purview of the statute (§ 51-1103 Ark. Stats.), and that as to him, the Tucker mortgage is barred, even if not barred as to his mother. This contention of Paul Atkinson, Trustee, is the second point to be hereinafter discussed.

Paul Atkinson, Trustee, mortgaged the property to Peoples Building & Loan Association of Little Rock, (hereinafter called "Peoples"); and the mortgage was recorded on February 23, 1950. Peoples claims that it is, at all events, a "third party", within the purview of the statute (§ 51-1103 Ark. Stats.); and that as to it, the Atkinson-Tucker mortgage is barred, even if not barred as to the other parties. This contention of Peoples is the third point to be hereinafter discussed.

This litigation was initiated by the appellants, as the executors of the estate of O. D. Tucker, filing foreclosure proceedings on March 29, 1950, and naming Mrs. Atkinson, Paul Atkinson, Trustee, and the Peoples Building & Loan Association, as defendants. The Chancery Court sustained defendants' contentions as heretofore stated, and entered a decree in their favor. The plaintiffs have appealed.

I. *Agency of Sherman Atkinson to Make Payments for Mrs. Atkinson.* Mrs. Atkinson has pleaded the 5-year Statute of Limitation (§ 37-209 Ark. Stats.) against the Tucker claim; and the effectiveness of her plea depends on whether Sherman Atkinson was her agent to make the payment of $25 on October 7, 1948. The notes would be barred by limitations even as to Mrs. Atkinson, unless the said payment of October 7, 1948, is binding on her. An authorized payment, if made even after limitation has run, renews the note as between the parties. *McNeill v. Rowland,* 198 Ark. 1094, 132 S. W. 2d 370; *Johnson v. Spangler,* 176 Ark. 328, 2 S. W. 2d 1089, 59 A. L. R. 899. Furthermore, payments by an authorized agent bind the

---

[1] This conveyance was recorded on Feb. 23, 1950

principal. *Schaefer* v. *Baker,* 181 Ark. 620, 27 S. W. 2d 83. It is beyond contradiction that Sherman Atkinson actually made the $25 payment on October 7, 1948. Mrs. Atkinson's counsel thus states the point:

"The payment could revive the debt only if Sherman Atkinson was the agent of Lidie P. Atkinson, in making the payment. . . . It is readily admitted that *if* Sherman Atkinson was the agent of Lidie P. Atkinson, by express appointment, by apparent authority, or by estoppel, the payment was sufficient to revive the debt."

We come then to the consideration of Sherman Atkinson's agency for his stepmother. At all times after 1913, Mrs. Atkinson (now 89 years of age), lived in Conway and owned the house and lot in Little Rock occupied by her step-son, Sherman Atkinson, until his death in 1950. In 1940, Mrs. Atkinson signed the notes and mortgage, and delivered them to Sherman Atkinson. He conducted all the negotiations, delivered the notes and mortgage to O. D. Tucker, obtained the proceeds of the loan, and used same to pay for repairs of the house. Sherman Atkinson continued to occupy the house, pay the taxes, keep up the insurance, remit rent to his step-mother, and do everything that was done in connection with the Tucker loan on the property. Mrs. Atkinson testified in her deposition that she visited the property only once or twice in the ten years from 1940 to 1950.

Despite the repeated statements in her deposition to the effect that Sherman Atkinson was not authorized by her to make the $25 payment in October, 1948, nevertheless the fact remains that in reference to the Tucker notes and mortgage, the following questions and answers appear in her testimony:

". . . will you state in what manner the mortgage deed and the notes were transmitted to O. D. Tucker, Sr., doing business as The Tucker Company, Agent? A. I do not know. I signed them and turned them over to Sherman. I do not know what he did with them. . . . I signed whatever papers Sherman gave me at that time and turned them over to him. . . . Q. Is it not true

that all details for arranging this loan and for the repayment of same were left up to Sherman Atkinson?[2] A. Yes.''

So the record abundantly discloses that Mrs. Atkinson executed the notes and mortgage in question, and delivered the papers to Sherman Atkinson, as her agent. He neither signed the mortgage, nor endorsed the notes, so the only position he occupied was that of agent of Mrs. Atkinson, his stepmother. She clothed him with authority to deliver the papers and receive the proceeds of the loan from Tucker, and the mortgage which she signed obligated her to keep the property insured for the benefit of Tucker. Most of the cases deal with the extent of the apparent authority of the agent to *receive,* rather than *make,* payments. Thus, in 2 Am. Jur. 128, the rule is stated:

''If an agent who negotiated a loan is allowed by the principal to retain in his possession the securities thereby obtained after a payment of interest or principal is due, the owner of the securities will not be permitted to deny that the agent possessed the authority, which the presence of the securities indicated that he had, if

[2] As further evidence of Sherman Atkinson's complete handling of the Tucker loan for Mrs. Atkinson, and also of the taxes, insurance policies, and upkeep of the property here involved, we quote the following from Mrs. Atkinson's deposition:

"Sherman H. Atkinson occupied the premises from about June 1, 1913, until about February 1, 1950. He paid me monthly rent for the same.

"Q. Did he pay taxes for any years from 1913 to the time of his death? If so, for what years?

"A. I do not know, but I suppose that Sherman paid all the taxes through 1947.

"Q. Did you personally attend to the maintenance of the property, and if not, who attended to these details? Explain fully.

"A. I did not personally attend to any maintenance. . . .

"Q. Was Sherman credited with the payment on his rent account when he paid general and special taxes on the property; if not, was Sherman Atkinson reimbursed by you for such expenditures?

"A. There were no credits or reimbursements. He never asked for any and I never made any.

"Q. Was Sherman Atkinson credited with the payment on his rent account when he paid insurance premiums on the property; if not, was Sherman Atkinson reimbursed by you for such expenditures?

"A. There were no credits or reimbursements. He never asked for any and I never made any."

the debtor or obligor, relying upon the possession of the securities and the apparent authority thus afforded to collect or receive payment, makes payment thereon. This rule applies where a mortgagee permits an agent who negotiates a loan to retain in his possession the bond and mortgage after the principal is due, and the mortgagor with knowledge of that fact, and relying on the apparent authority thus afforded, makes a payment to him.''[3]

The rule of the above quotation applies where the agent makes a loan for the principal and retains his securities. In that event, the law is that the agent, in receiving payments, does so within the implied or apparent scope of his authority and the principal is estopped to deny such authority of the agent. By all logic, the same rule—of apparent authority of the agent to *make* payment on the indebtedness and estoppel of the principal to deny such authority—applies when the agent negotiates the loan for the principal, retains in his possession the property, remits the rents, and is allowed over the years, to pay the taxes and insurance premiums that are specified in the mortgage. The apparent authority of the agent is as clear in one situation as in the other. In the case at bar, Sherman Atkinson retained possession of the premises, expended the proceeds of the loan, paid the taxes, kept the property insured, and remitted the rents to his stepmother. In the light of the evidence detailed, and other evidence in the record, we therefore hold that in making the payment of October 7, 1948, Sherman Atkinson acted within the implied or apparent scope of his authority, and that Mrs. Atkinson is estopped to deny such authority.

In the brief filed for Mrs. Atkinson in this Court the following appears:

''. . . even though the conduct of Sherman Atkinson and Lidie P. Atkinson might justify the position that for a time he was her agent, still the payment of October 7, 1948, cannot be imputed to Sherman Atkinson as the agent of Lidie P. Atkinson. . . . Whatever agency

---

[3] To the same general effect, see American Law Institute's Restatement of Agency, § 71 *et seq.*

might have existed between Lidie P. Atkinson and Sherman Atkinson terminated."

Under the facts in this case, we hold that the agency continued until Mrs. Atkinson—either acting personally or by an authorized agent—gave the mortgagee notice of revocation of Sherman Atkinson's agency. It is claimed that Paul Atkinson told one of the appellants in July, 1948, that Sherman Atkinson was not the authorized agent of Mrs. Atkinson. This statement was not made by Mrs. Atkinson to the appellant until December, 1948; there is no evidence whatsoever that any of the appellants knew or suspected that Paul Atkinson had any authority to act for his mother in July, 1948; and in fact no such agency is shown. So, we hold that Mrs. Atkinson cannot successfully plead the 5-year Statute of Limitation against the obligation sued on.

II. *Plea of Limitation made by Paul Atkinson, Trustee.* As previously stated, Mrs. Atkinson conveyed the property herein to Paul Atkinson, Trustee, by a deed dated February 18, 1950, and recorded on February 23, 1950; and he claims that he is a "third party" within the purview of § 51-1103 Ark. Stats. In discussing the rights of the Peoples Building & Loan Association in the subsequent section of this opinion, we will have occasion to discuss § 51-1103 Ark. Stats. in somewhat greater detail. It is sufficient now to consider only whether Paul Atkinson, Trustee, is a "third party" within the purview of the statute.

In the deed, which covered not only the property here involved, but also other property, Mrs. Atkinson stated that as "settlor" she desired "to relieve herself of the care of her estate by establishing a trust upon the following terms and conditions, and for the following uses:"

" '(a) The Trustee shall collect and receive the rents', (and after paying taxes, insurance premiums, repairs, etc.) 'shall pay the residue over from time to time to the Settlor, so long as she shall live. . .".'

(c) After the death of the Settlor, the property would be sold, and the proceeds invested by the Trustee,

with the interest to go to the Settlor's daughter, Louise P. Atkinson, for her life.

(d) After the death of Louise P. Atkinson, the *corpus* would be divided between the Settlor's two named children, or their heirs, *per stirpes.*

It is evident that Mrs. Atkinson's purpose was to so arrange her affairs that she would receive all of the net rents and revenues of her property during her lifetime, just as she had received them during the period of time that Sherman Atkinson occupied the property, from 1913 up until the time of his death. By the trust deed, Paul Atkinson became his mother's trustee by legal document, whereas Sherman Atkinson had been his stepmother's agent in actuality. Both Paul Atkinson and his mother testified that she executed the trust without any consideration except love and affection, and to relieve herself of the management of the property, and to make certain that her daughter, Louise, would be cared for after Mrs. Atkinson passed away.

In the light of the foregoing detailed facts, and others which appear in the record, we conclude that Paul Atkinson, Trustee, was not a "third party" within the purview of § 51-1103 Ark. Stats. This holding is in accord with our previous cases regarding a "third party" under such statute. Some of these previous cases are: *Kansas City Life Ins. Co.* v. *Marsh,* 196 Ark. 1121, 121 S. W. 2d 81; *Denham* v. *Lack,* 200 Ark. 455, 139 S. W. 2d 243; *Tyler* v. *Niven,* 194 Ark. 538, 108 S. W. 2d 893; *Armstrong* v. *Armstrong,* 181 Ark. 597, 27 S. W. 2d 88; and *Citizens' Bank* v. *Garrott,* 192 Ark. 599, 93 S. W. 2d 319. In *Kansas City Life* v. *Marsh, supra,* we held that one holding under a voluntary conveyance was not a "third party" within the purview of the statute. In that case, the widow conveyed the property to the wife of her attorney, and the latter, to another friend, all for the purpose of being able to invoke the statute. We held that none of the parties was a "third party." In *Denham* v. *Lack, supra,* the father conveyed to the son in an attempt to defeat the mortgage indebtedness, and -- held that the son was not a "third party" within the

purview of the statute. In *Tyler* v. *Niven, supra,* we held that the wife of a tenant was not a "third party." In *Armstrong* v. *Armstrong, supra,* we held that the brothers and sisters of the mortgagor were not "third parties." In *Citizens' Bank* v. *Garrett, supra,* we held that a judgment creditor could not invoke the statute. These cases buttress the conclusion that we have here stated.

III. *Plea of Limitation Made by Peoples Building & Loan Association.* Peoples, a corporation engaged in making loans on improved real estate, contracted to make a loan on this property to Paul Atkinson, Trustee. The mortgage to Peoples was dated February 20, 1950, and actually recorded on February 23, 1950; and Peoples claims that even though Mrs. Atkinson and Paul Atkinson, Trustee, are unsuccessful in their contentions, nevertheless Peoples is entitled to the benefits of § 51-1103 Ark. Stats. because it is undoubtedly a "third party" within the purview of that statute, the germane portions of which read:

". . . Provided, when any payment is made on any such existing indebtedness, . . . such payment shall not operate to . . . extend . . . the statute of limitation . . . so far as the same affects rights of . . . *third parties,* unless the mortgagee . . . shall, *prior to the expiration of the period of the statute of limitation,* endorse a memorandum of such payment . . . on the margin of the record." (Italics our own).

In *Kansas City Life Ins. Co.* v. *Marsh,* 196 Ark. 1121, 121 S. W. 2d 81, Mr. Justice McHANEY, in discussing this statute, said:

"We have many times held that where no marginal endorsements of payments on the record within the statutory period are made, the instrument becomes in effect an unrecorded mortgage, and is binding as between the parties. . . .

"It, therefore, follows that the mortgage in question, by reason of the failure to make indorsements of payments on the margin of the record, became an un-

recorded mortgage, and like an unrecorded mortgage, was good between the parties if payments were made that would keep it alive. : . . To be availing as against third parties, such payments would have to be made within the period of the statute and indorsed on the record within the period, . . .''

From what we have said in discussing the contentions of Paul Atkinson, Trustee, it is apparent that under the plain wording of the statute, no endorsement of the October 7, 1948, partial payment was made on the margin of the record where the Tucker mortgage was recorded, until long after the mortgage was apparently barred as to third parties. Therefore, such marginal endorsement when later made, did not revive the lien of the Tucker mortgage as to third parties. That Peoples is such a ''third party'' admits of no serious controversy.[4]

By the terms of the mortgage, Peoples agreed to loan Paul Atkinson, Trustee, an amount up to $5,000. Prior to the trial, from whence comes this appeal, Peoples, in reliance on its mortgage, actually loaned $3,752.66 to Paul Atkinson, Trustee. Appellants argue that Peoples had paid out only $300 when Peoples received actual knowledge of appellants' claim; and appellants argue that Peoples is entitled to a prior lien for only $300 instead of $3,752.66. We refuse such argument of appellants. Peoples' actual knowledge of appellants' claim was no more effective than actual knowledge of an unrecorded mortgage. Peoples had a right to continue to make advances under its mortgage until restrained, or, by litigation, recordation, or *lis pendens*, given legal notice of appellants' claim. Until such legal eventuality, appellants' status was nothing more than that of one holding an unrecorded mortgage. In *Clark* v. *Shockley,* 205 Ark. 507, 169 S. W. 2d 635, we quoted *Morgan* v. *Kendrick,* 91 Ark. 394, 121 S. W. 278, 134 Am. St. Rep. 78, concerning the statute which is now (with amendments not important to this case) § 51-1103:

'' 'The effect of that statute, as to strangers to the transaction, is that when the debt secured by a mortgage

[4] In 62 C. J. 920 Arkansas cases are collected which construe the words "third party."

is apparently barred by limitation, and no payments which would stay the limitation are indorsed on the margin of the record of the mortgage, it becomes as to such third parties an unrecorded mortgage; and like an unrecorded mortgage it constitutes no lien upon the mortgaged property, as against such third party, notwithstanding he has actual knowledge of the execution of such mortgage.' "[5]

We hold that People's mortgage, to the extent of said amount of $3,752.66, is prior to any claim of the appellants; and the authority for our conclusion may be found in our holdings in the following cases: *Johnson v. Lowman,* 193 Ark. 8, 97 S. W. 2d 86; *Matthews v. Mullins,* 201 Ark. 579, 145 S. W. 2d 718; *Bank of Mulberry v. Sprague,* 185 Ark. 410, 47 S. W. 2d 601; and *Clark v. Shockley,* 205 Ark. 507, 169 S. W. 2d 635.

In all other respects, except as to Peoples' mortgage, the decree is reversed and the cause remanded with directions to (1) enter a decree for appellants against Mrs. Lidie P. Atkinson for the balance of principal and interest due on the Tucker indebtedness; (2) adjudge such amount superior to any claim of Mrs. Atkinson and/or Paul Atkinson, Trustee; (3) fix a reasonable time for the payment of such amount, and if not paid, then foreclose the lien of appellants, subject to the mortgage of the Peoples Building & Loan Association for its debt of $3,752.66 and interest. Peoples will recover all its costs against appellants; and appellants will recover all costs against Mrs. Lidie P. Atkinson and the title of Paul Atkinson, Trustee.

Mr. Justice GEORGE ROSE SMITH not participating.

[5] Section 51-1002 Ark. Stats. is the section concerning recordation of mortgages.