Tolson *v.* Pyramid Life Insurance Company.

4-9981                                254 S. W. 2d 53

Opinion delivered January 19, 1953.

*Cunningham & Sloan,* for appellants.

*Ponder & Lingo,* for appellee.

WARD, Justice. The record shows the following to be substantially the facts and circumstances in this case:

On April 10, 1931, Mrs. Corrine Young, being the owner of the east half of lots 5 and 6, block 43, Fontaines' Addition to Walnut Ridge, executed a mortgage on said lots to the Georgia State Savings Association to secure her note in the sum of $1,750. Due, perhaps, to the depression, she made only a few payments on the note and consequently became delinquent on her payments to the loan company and also on improvement taxes on the property.

Later, Mrs. Young married Marvin Jones and they also allowed the monthly payments and interest to accrue until on October 1, 1939, the amount due Georgia State Savings Association, including interest and advances for insurance and state and county taxes, was $2,888.50, and, in addition, they owed a considerable amount for delinquent taxes to Street Improvement District No. 2 of Walnut Ridge.

By agreement of all parties concerned it was arranged, in effect, for appellants to buy the property from Mr. and Mrs. Jones for approximately $500 less than the amount then due and to apply to the Georgia State Savings Association for a loan in the required amount. Accordingly, on August 26, 1939, appellants signed an application, on a regular form, to said loan company for a loan in the amount of $2,300. This application showed there were delinquent taxes due Improvement District No. 2 in the amount of $690.30 for the years 1930 to 1939, inclusive, which amount applicants [appellants] assumed and Georgia State Savings Association agreed to later advance if necessary to protect its title.

On August 30, 1939, Jones and his wife executed a warranty deed conveying the described property to E. C. Tolson for the consideration of $1.00 and the agreement of the grantee to refinance the original loan mentioned above. The deed stated that the grantee would assume all unpaid taxes due said District No. 2.

On October 4, 1939, appellants executed a note and deed of trust to said loan company in the amount of $2,300, payable $23.64 per month for 144 months, including principal and interest. It was explained that the reason the loan company did not make a loan sufficient to also pay the improvement taxes was that it appeared there was a chance to settle with the Improvement District for a less amount.

Appellants kept up their monthly payments on the loan, but paid nothing on the delinquent taxes to the Improvement District. Therefore, Georgia State Savings Association, under a provision of the deed of trust, advanced the necessary money by two checks in 1940 and 1941. These checks, for $90.30 and $600, were made out to and endorsed by R. B. Warner, Receiver for the Street Improvement District, and E. C. Tolson.

On December 23, 1949, Georgia State Savings Association assigned its note and deed of trust to appellee and at that time so informed Tolson by letter in which he was reminded it had paid the delinquent taxes mentioned above, and advised him to have the loan refinanced.

Appellants made the last monthly payment under the terms of the deed of trust [but nothing on the advances] on October 4, 1951, and so notified appellee. Due to an error in bookkeeping, appellee executed and mailed to appellants a full release. There is no contention by appellants that this was not an error on the part of appellee.

Appellee made demand on appellants for the money advanced for the payment of said delinquent taxes and interest thereon. After some days of fruitless negotiations appellee filed suit to foreclose its mortgage. The lower court ruled in favor of appellee and, on appeal, appellants urge two grounds for a reversal.

First, appellants quote extensively from the ledger sheet showing the status of the Corrine Young loan at the time they took title, in an attempt to show Georgia State Savings Association made excessive [not usurious]

interest charges. This contention has no merit because appellants, in effect, bought the property at a stipulated price of $2,300. This was what they evidently thought the property was worth, considering the delinquent tax situation, and this is the amount they borrowed from the loan company. If appellants desired to buy the property cheaper than $2,300 they should not have accepted the deed from Mr. and Mrs. Jones and should not have signed the note and deed of trust to the loan company. Moreover, there is nothing in the record to show that appellee had knowledge of any such overcharges, if in fact they existed, and so must be considered an innocent purchaser for value.

Second, neither can we agree with appellants' contention that appellee's suit is barred by the statute of limitations, as an open account. Appellee's right to reimbursement arises from the terms of the deed of trust signed by appellants, and would not be barred until five years after the last payment became due. The advancements were made pursuant to certain provisions contained in the deed of trust, the pertinent parts of which were as follows:

(a) ". . . and thus secure . . . the prompt payment of any other or additional indebtedness owing by the borrower to lender . . ."

(b) "And in further trust to secure the payment of any other or additional indebtedness of whatever kind or character that may be owing by the borrower to the lender, any additional loan or loans made by lender to borrower . . . up to the time of foreclosure of this deed of trust."

(c) "And in default of payment of installments of principal and interest . . . or non-payment of insurance premiums, taxes, assessments, or other charges. . . ." the trustee could sell the property. The documentary and oral testimony leave no doubt that appellants knew at the beginning and all along they were obligated to pay the delinquent assessments, and they

accepted the money [by endorsing the checks] from the loan company for that purpose.

Advancements made by the loan company under the facts and circumstances set forth above became a part of the principal debt and were secured by the deed of trust. In the case of *Kansas City Life Insurance Co.* v. *Marsh,* 196 Ark. 1121, 121 S. W. 2d 81, the court rejected a contention that a payment by a mortgagee as an advancement for taxes under a mortgage was not a payment on the principal debt so as to extend the statute of limitations. In this connection the court, at page 1126, said:

"It is contended that this shows a payment on taxes only and not on the notes, and, therefore, there was no revival of the debt. We cannot agree that such is the effect, but are of the opinion, that these payments should be treated as payments on the whole debt existing at that time, including interest, taxes, insurance, etc., all secured by the mortgage along with the notes."

Affirmed.