**In the Matter of DORSEY ELECTRIC SUPPLY CO., Inc.**

**No. LR–70–B–394.**

United States District Court,
E. D. Arkansas, W. D.

June 21, 1972.

Abner McGehee, Cockrill, Laser, McGehee, Sharp & Boswell, Griffin Smith, Little Rock, Ark., for Union National Bank of Little Rock.

Richard M. Pence, Jr., Asst. U. S. Atty., Little Rock, Ark., for the United States.

### MEMORANDUM OPINION

EISELE, District Judge.

This case comes to this Court on a petition for review of an order of the Referee in Bankruptcy disallowing Union National Bank's Claim No. 1.

On September 26, 1968, the bankrupt, Dorsey Electric Supply Co., Inc., executed an inventory security agreement granting a security interest to the petitioner, Union National Bank of Little Rock, in all the bankrupt's present and after-acquired inventory and the proceeds thereof. On October 3, 1968, financing statements were duly filed with the Circuit Clerk, Pulaski County, Arkansas, and with the Secretary of State, State of Arkansas. The inventory security agreement was collateral for a line of credit extended by petitioner to the bankrupt. It was understood between the parties that the limit on the line of credit was $65,000.00. The first advance on the line of credit was made on October 1, 1968, in the amount of $20,000.00. Additional advances were

made on November 1, 1968, and December 27, 1968, in the amounts of $35,000.00 and $10,000.00 respectively. The amount of the debt owed by the bankrupt to petitioner was evidenced by a series of thirty-day notes. The last of said notes was made on January 9, 1970, for $62,500.00 which represented the total amount advanced less credits. The balance due on this note on September 10, 1970, was the sum of $52,980.80. Collateral for all the notes was the inventory of the debtor.

On November 1, 1968, the bankrupt also executed a promissory note payable to the Union National Bank in the amount of $35,000.00, bearing interest and payable on November 3, 1969. To secure payment of this note the debtor executed to petitioner a deed of trust on certain real property in Pulaski County, Arkansas. That note recites that payment of the note "is secured by a deed of trust of even date." Said note does not mention or describe or refer to the inventory security agreement dated September 26, 1968. By an extension agreement, payment of the note was extended to November 3, 1970.

On August 19, 1970, petitioner filed its proof of secured claim in the above bankruptcy. That proof of claim set out as Claim No. 1 the balance due under the promissory note secured by the inventory security agreement which was in the amount of $53,817.25. Claim No. 2 represented the balance due under the promissory note secured by the Deed of Trust which was in the amount of $37,458.75.

All of the assets of the bankrupt were sold at public sale and the proceeds from the sale of the mortgaged real property came to $54,000.00 from which sum the petitioner's Claim No. 2 was paid in full, less expenses, leaving approximately $16,500.00. In addition, there was disbursed to petitioner, from the proceeds of the sale of the inventory the sum of $11,354.76 which was credited to Claim No. 1, leaving a balance due under that claim of $42,462.49.

Petitioner's Claim No. 1 is predicated on the contention that the Deed of Trust on the real estate was security for all of the obligations due the bank from the Dorsey Electric Supply Co., Inc., arising after its execution on November 1, 1968.

The United States of America has a tax lien on all the property and rights to property of the bankrupt in the amount of $11,019.00 as reflected by its proof of claim filed October 14, 1970. It filed an objection to the allowance of the bank's claim on November 10, 1970, alleging that Claim No. 1 was not secured by the bank's Deed of Trust on the real estate and that, from the $16,500.00 in the hands of the trustee, the government's claim should be first satisfied.

Petitioner concedes that its Deed of Trust was not security for the antecedent indebtedness of $20,000.00, advanced to the bankrupt on October 1, 1968. As to the balance of funds advanced by the bank, the Referee found that they were not secured by the bank's Deed of Trust and entered an order sustaining the government's objection to the allowance of the claim.

It is agreed that the issues presented are controlled by Arkansas law.

 It is clear that, under Arkansas law, parties to a mortgage or deed of trust may extend by contract the lien thereof to obligations, including future advances, other than those specifically described in the instrument. American Bank and Trust Co. v. First National Bank of Paris, Arkansas, 184 Ark. 689, 43 S.W.2d 248 (1931); Hendrickson v. Farmers' Bank and Trust Co., 189 Ark. 423, 73 S.W.2d 725 (1934). There is no limitation upon the right to contract with respect to the extent of the debt to be secured by a mortgage, Hollan v. American Bank of Commerce & Trust Co., 168 Ark. 939, 272 S.W. 654 (1925), but provisions in deeds of trust which purport to extend the security to indebtedness other than the primary debt must be construed strictly. Berger v. Fuller, 180 Ark. 372, 21 S.W.2d 419.

In *Hendickson*, supra, the Court stated:

"As suggested by our early cases, in the construction of a mortgage the real question is, 'What was the intention of the parties to the mortgage?' In determining this, all the circumstances attendant upon the execution of the mortgage and the nature of the transaction itself are to be considered . . .; and, in order to extend the intention of the parties beyond the primary purpose of the mortgage so as to secure the payment of debts other than those specifically mentioned, from our decisions and principles of natural justice the following rule may be deduced: Where a mortgage is given to secure a specific debt named, the security will not be extended as to antecedent debts unless the instrument so provides and identifies those intended to be secured in clear terms, and, to be extended to cover debts subsequently incurred, these must be of the same class and so related to the primary debt secured that the assent of the mortgagor will be inferred. The reason is that mortgages, by the use of general terms, ought never to be so extended as to secure debts which the debtor did not contemplate. 'Where one contracts in good faith with a debtor that security given should include not only that specifically mentioned in the mortgage but other indebtedness, whether existing then or to be incurred in the future, it is not difficult to describe the nature and character thereof so that both the debtor and third parties may be fully advised as to the extent of the mortgage.' American Bank & Trust Co. v. First National Bank of Paris, supra." 189 Ark. at pages 433–434, 73 S.W.2d at page 729.

In National Bank of Eastern Arkansas v. Blankenship, 177 F.Supp. 667, 672 (D.C.1959), Judge Henley states:

"There is no question that under Arkansas law the parties to a mortgage or deed of trust may by contract extend the lien thereof to obligations other than those specifically described in the instrument, provided they express their intent to do so with sufficient definiteness. . . . Every mortgage is to be interpreted in the light of its own language, and 'as there is no limitation upon the right to contract with reference to the extent of the debt secured by a mortgage . . . the province of the court is merely to interpret the language and declare the rights of the parties in accordance with their intentions as expressed in the language used.' Hollan v. American Bank of Commerce & Trust Co., supra, 168 Ark. at page 941, 272 S.W. at page 655."

And at page 675, Judge Henley remarks:

". . . it seems to the Court that the extent of such a lien should be measured primarily by the intent of the parties as disclosed objectively by the language used when considered in the light of the nature of the transaction involved and the surrounding facts and circumstances."

On appeal Judge Henley's decision was affirmed, Judge Van Oosterhout pointing out [283 F.2d 574 (8 Cir.)]:

"The court concedes that under Arkansas law the parties to a trust deed or mortgage may contract to extend the lien created by such instruments to obligations other than those specifically described, provided they express their intent so to do with sufficient definiteness, and that absent ambiguity, courts must interpret the trust deed in accordance with the intention of the parties as expressed by the language appearing in such instrument.

\* \* \* \* \* \*

"The Bank, in support of its position, relies on Hollan v. American Bank of Commerce & Trust Co., supra. This case tends to support the Bank's contention and emphasizes that the contract must be interpreted in accordance with the intention of the parties as expressed in the words used

in the contract. The *Hollan* case distinguishes the *Page* case, supra, on the basis of difference in language and observes that each case of this type must be decided upon its own peculiar facts."

The government relies upon Page v. American Bank of Commerce & Trust Co., 167 Ark. 607, 269 S.W. 561 (1925) in contending that future advance clauses do not cover loans secured by separate mortgages on entirely different property. But in *Page* the court was simply attempting to find the intent of the parties as, in Judge Henley's words, "disclosed objectively by the language used when considered in the light of the nature of the transaction involved and the surrounding facts and circumstances". As the Supreme Court of Arkansas stated in *Page*:

" . . . We think the proper interpretation of the clause for advances in the several mortgages, was to secure any additional advances which appellee might make on any particular shipment, and not to secure independent loans secured by other mortgages on independent shipments. The clause was not intended to cover loans secured by separate mortgages on entirely different property, but to secure advances related and incident to each particular contract and shipment."

Shortly after the *Page* decision was handed down, that sáme Court rendered its decision in Hollan v. American Bank of Commerce & Trust Co., 168 Ark. 939, 272 S.W. 654 (1925). In the *Hollan* case the future advance clause read as follows:

"This deed of trust shall be security for any other indebtedness of whatever kind or character that may be owing by grantor to said American Bank of Commerce & Trust Company up to the time of foreclosure of this deed of trust, whether then matured or not, but the lien therefor shall be subordinate to the lien for the indebtedness herein specifically described."

After discussing the facts the Court stated:

". . . Each instrument, of course, must be interpreted according to its particular language, and, in order to interpret the present mortgage in accordance with the contention of counsel for appellants, it would be necessary to wholly reject the language in the mortgage which has an unmistakable meaning. Howell v. Walker, 111 Ark. 362, 164 S.W. 746; Word v. Cole, 122 Ark. 457, 183 S.W. 757.

"We must interpret the language of this mortgage to mean just what it says—that it secures any indebtedness incurred up to the time of the foreclosure. It is a matter of contract between the parties, as there is no limitation upon the right to contract with reference to the extent of the debt secured by a mortgage, and the province of the court is merely to interpret the language and declare the rights of the parties in accordance with their intention as expressed in the language used."

The appellant in *Hollan* contended that *Page* controlled but the Court rejected that argument, stating:

"It will be observed that the clause of the mortgages involved in that case and the clause involved in this case are couched in entirely different language. In the former case it provided for the security of 'all other moneys, advances, goods, wares, merchandise, supplies, services, etc.' whilst in the present case the mortgage secures 'any other indebtedness of whatever kind or character that may be owing by grantor to said American Bank of Commerce & Trust Company up to the time of foreclosure of this deed of trust.' The former mortgages were restricted by the language to indebtedness incurred for advances, whereas the mortgage now before us embraces any kind of indebtedness. The language of the present mortgage is just about as broad as it is possible to make it.

\* \* \* \* \* \*

" . . . It is difficult to imagine how more appropriate language could have been used by the parties with the intention of accurately describing the particular kind of indebtedness involved in the present case. It is clear that the parties meant to include every kind of indebtedness or liability of appellants to the appellee, whether it arose directly or indirectly."

And see the dissent in the *Page* case.

Assuming under Arkansas law that the parties to a mortgage may extend the lien of that mortgage to secure other indebtedness of the mortgagor arising out of subsequent advances if that intention and understanding is clearly expressed in the mortgage by the parties, it is difficult to see any merit in the government's argument here since the language of the Deed of Trust makes it clear that the parties intended it to secure "the payment of *all other indebtedness of every kind and nature, direct or indirect . . . whether predicated upon future loans or advances* or obligations" of the bank to the mortgagor, Union National Bank, it being specifically agreed that the Deed of Trust "shall stand as security for all such indebtedness whether or not the same shall be *similar* or *dissimilar* or *related* or *unrelated* to the primary indebtedness".[1] (Emphasis supplied.) In the absence of such specific language the Arkansas law would require that such subsequent loans or advances be of the "same class" as the primary obligation and so related to it that the consent of the debtor to its inclusion could be inferred. But here there is no need to "infer" the intent of

the debtor since that intent is expressed in clear and unambiguous language.

■ Union National Bank argues that, even in the absence of such specific language, it would be entitled to prevail since there was no showing that the advances made on November 1, 1968, or December 27, 1968, were not of the "same class" as the primary indebtedness. And the stipulation makes it clear that all such loans were made to the Dorsey Electric Supply Co., Inc., from which it must be presumed, in the absence of evidence to the contrary, that the proceeds thereof were to be used in the conduct of that corporation's business. This Court believes that the bank's argument in this respect has merit but it relies principally upon the specific language of the Deed of Trust. The requirement that the future advances of the "same class" is only required, under Arkansas law, where the language of the mortgage, or Deed of Trust, does *not* make it clear that the lien is intended to cover all other indebtedness even where not of the "same class". Here it would appear that the draftsman of this particular Deed of Trust clearly had in mind the Arkansas law when he provided that the Deed would stand as security for all other indebtedness "whether or not the same shall be similar or dissimilar or related or unrelated to the primary indebtedness". The government could prevail here only if the Arkansas law would have the effect of declaring the quoted language of this Deed of Trust void as against public policy. Such is not the case. The Arkansas law simply requires

---

1. The entire "future advance" clause reads as follows:

"And the lien of this instrument shall extend to and stand as security for the payment of all other indebtedness of every kind and nature, direct or indirect, owing by the Grantor to the Bank prior to payment in full with interest, of the PRIMARY INDEBTEDNESS secured hereby or the foreclosure of this instrument (whichever event shall first occur) and whether predicated upon future loans or advances or obligations incurred to the Bank by the Grantor through endorsements, guaranties or suretyship, and including notes, accounts, or other choses in action, acquired by the Bank through assignment, subrogation or otherwise, it being agreed that this instrument shall stand as security for all such indebtedness whether or not the same shall be similar or dissimilar or related or unrelated to the PRIMARY INDEBTEDNESS."

that the intention to cover future advances which are not of the "same class" must be clearly set forth in the agreement, which is exactly what was done here.

The claim of the Union National Bank of Little Rock for priority against the "excess" proceeds from the sale of the real property in the amount of "approximately $16,500.00" is hereby granted with respect to the November 1, 1968, and December 27, 1968, advances, the Referee's order in all other respects being hereby affirmed.