**In re Dwight Murry FERGUSON and Mary Allene Ferguson, Debtors.**

**Bankruptcy No. TX 87–121 F.**

United States Bankruptcy Court, W.D. Arkansas, Texarkana Division.

April 15, 1988.

Robert Depper, El Dorado, Ark., for debtors.

A.L. Tenney, Little Rock, Ark., Trustee.

Stephen T. Arnold, Texarkana, Ark., for creditor.

## MEMORANDUM OPINION

ROBERT F. FUSSELL, Chief Judge.

Before the Court are the Objection to Plan of debtors, Dwight Murry Ferguson and Mary Allene Ferguson, and the Objection to Amended Plan of debtors filed by Jim Walter Homes, Inc. (Jim Walter). In their original plan, the debtors proposed to treat Jim Walter as a secured creditor, but did not propose to cure arrearages, pay attorney's fees or pay insurance expenses expended by Jim Walter. After Jim Walter filed its first objection, the debtors modified their plan to provide for payment of arrearages on the loan installment but continued to treat attorney's fees and insurance expenses as unsecured claims. Jim Walter objected to the amended plan on the grounds that the attorney's fees and insurance expenses were not unsecured debts, but were part of the secured claim.

The objections were set for hearing on February 8, 1988. At the time of the hearing, the parties announced that the issues regarding attorney's fees had been settled and attorney's fees in the amount of $1,085 were to be made part of Jim Walter's secured claim under the plan. The parties informed the Court, however, that no agreement could be reached regarding $2,027.61 in insurance expenses. Jim Walter contended that it was entitled to receive payment of the insurance expenses as a secured claim by virtue of a future advance clause contained in the mortgage between the two parties. The debtors contended that the future advance clause did not contemplate Jim Walter's insurance payments becoming part of the secured claim. The Court took the matter under advisement to determine whether the insurance payments made by Jim Walter on debtors' property are part of Jim Walter's secured claim by virtue of the future advance clause contained in the mortgage.

### Jurisdiction

This Court has jurisdiction of the matter pursuant to 28 U.S.C. § 157(b)(2)(L).

### Findings of Fact

On June 3, 1977, the debtors contracted with Jim Walter to build a home on certain real property for $30,816. As part of the transaction, the debtors executed a promissory note in favor of Jim Walter in the principal amount of $30,816, to be paid in installments of $171.20 per month, and provided Jim Walter with a mortgage on the real property where the house was to be located. Pertinent provisions of the mortgage provided:

6. This mortgage shall also be security for any other indebtedness of whatsoever kind that the Grantee or the holder of this Mortgage may hold against Grantor by reason of future advances made hereunder, by purchase or otherwise, to the time of the satisfaction of this mortgage.

7. In the event of default or payment of any part of said sum, with interest, or upon failure of Grantor to perform the agreements contained herein, the Grantee's successors and assigns, shall have the right to declare the entire debt to be due and payable; notice to Grantor is waived, and said option may be exercised at any time after default; and Grantor hereby covenants that he will keep all improvements insured against all loss or damage by fire, wind storm, tornado and water damage as may be required by Grantee, and in a company or company's acceptable to Grantee. All said policies and renewals thereof shall contain mortgagee clauses with or without full contribution as the Grantee shall require, and in such form as shall be satisfactory to Grantee, by which any loss or damage under said policy shall be payable to Grantee as its interest may appear. Original insurance policy shall be delivered to and held by the Mortgagee without liabilities.

.....

10. Now, therefore, if Grantor shall pay all indebtedness secured hereby, with interest, at the times and in the manner aforesaid, and performed the agreements herein contained, then this conveyance shall be void. In case of non-payment or failure to perform the agreements herein contained, the said Grantee, its successors and assigns, shall have the right and power to take possession of the property herein conveyed and expel any occupants therefrom without process of law; to collect rents and profits and apply same on unpaid principal indebtedness; and, with or without possession, to sell said property at public sale....

From 1977 to 1987, Jim Walter purchased insurance coverage up to the amount of the debt owed, insuring the house against loss. The amounts of insurance premiums paid by Jim Walter over the ten year period totalled $2,027.61.

On October 23, 1987, the debtors filed chapter 13 bankruptcy proceedings. On their schedules, Jim Walter was listed as a secured creditor currently having an undisputed secured claim of $10,796.91, consisting of $9,711.91 due under the note, plus $1,085 in attorney's fees. The debtors have listed Jim Walter as an unsecured claimant for the amount of the insurance premiums and proposed to make no payout under the plan to unsecured creditors. The debtors have listed the fair market value of the property securing Jim Walter's lien as $35,000.

### Conclusions of Law

Under Arkansas law, parties to a mortgage may extend the mortgage contract to obligations other than those specifically described in the mortgage. *In re Dorsey Elec. Supply Co.*, 344 F.Supp. 1171, 1172 (E.D.Ark.1972); *Hendrickson v. Farmers Bank & Trust Co.*, 189 Ark. 423, 433–34, 73 S.W.2d 725, 729 (1934). Although there is no limitation upon the right to contract the extent of debt to be secured by a mortgage, provisions which extend indebtedness to debts other than the primary debt are construed strictly. *Dorsey Elec. Supply Co.*, 344 F.Supp. at 1172; *Hollan v. American Bank of Commerce & Trust Co.*, 168 Ark. 939, 941, 272 S.W. 654, 655 (1925).

The general rule is that where a mortgage is given to secure a specific debt, the mortgage will not be extended to cover debts subsequently incurred unless the debts are of the same class or so related to the primary debt secured that the assent of the mortgagor will be inferred. The reason for this rule is that mortgages, by the use of general terms, should not be extended to secure debts that a mortgagor did not contemplate. *Union Nat'l Bank v. First State Bank & Trust of Conway*, 16 Ark. App. 116, 119, 697 S.W.2d 940, 941–42 (1985); *see also Dorsey Elec. Supply Co.*, 344 F.Supp. at 1173; *Security Bank v. First Nat'l Bank*, 263 Ark. 525, 532, 565 S.W.2d 623, 627 (1978); *Hendrickson v. Farmers' Bank & Trust Co.*, 189 Ark. 423, 433–34, 73 S.W.2d 725, 729 (1934). Therefore, the Court must interpret the language contained in a mortgage and determine the rights of the parties in accordance with their expressed intentions. *National Bank of East. Ark. v. Blankenship*, 177 F.Supp. 667, 672 (E.D.Ark.1959).

Many of the cases interpreting future advance clauses under Arkansas law have involved broader issues than the issues involved in this case and have addressed whether future advance clauses on certain mortgages served as security for subsequent loans rather than whether a future advance clause encompassed advances under the same loan. *See, e.g., In re Dorsey Elec. Supply Co.*, 344 F.Supp. 1171 (E.D. Ark.1972) (future advance clause in mortgage extended a mortgage to secure advances under a subsequent line of credit); *National Bank of East. Ark. v. Blankenship*, 177 F.Supp. 667 (E.D.Ark.1959) (lien secured by deed of trust with future advance clause on home did not serve as security for subsequent loans secured by deeds of trust on a farm or store, but were separate transactions); *Union Nat'l Bank v. First State Bank & Trust Co.*, 16 Ark.

App. 116, 697 S.W.2d 940 (1985) (future advance clause of first mortgage extended lien to advances made under subsequent loans).

Although no Arkansas cases were located with the specific fact situation in this case, the Arkansas Supreme Court has ruled on a similar situation. In *Tolson v. Pyramid Life Ins. Co.*, 221 Ark. 492, 254 S.W.2d 53 (1953), the Arkansas Supreme Court determined that advances made by a loan company for taxes on property secured by a deed of trust were within the scope of a future advance clause contained in a deed of trust and became part of the principal debt secured by the deed of trust.[1] To reach this decision, the supreme court relied upon a decision in an earlier case, *Kansas City Life Ins. Co. v. Marsh*, 196 Ark. 1121, 121 S.W.2d 81 (1938), where it had found that a payment for taxes advanced by a mortgagee became a payment on a principal debt in order to allow a statute of limitations to be extended. The supreme court in *Tolson* quoted *Kansas City Life Ins. Co. v. Marsh*, which stated, "[T]hese payments should be treated as payments on the whole debt existing at that time including interest, taxes and insurance, etc., all secured by the mortgage along with the notes." *Tolson v. Pyramid Life Ins. Co.*, 221 Ark. at 496, 254 S.W.2d at 55 quoting *Kansas City Life Ins. Co. v. Marsh*, 196 Ark. at 1127, 121 S.W.2d at 84. This language indicates that insurance payments advanced by mortgagee could be found to be secured under a future advance clause and become part of the debt secured by the mortgage.

■ In the present case, paragraph 6 provided that the mortgage between the debtors and Jim Walter would serve as "security for any other indebtedness of whatsoever kind that the Grantee or the holder of this mortgage may hold against Grantor by reason of future advances made hereunder, by purchase or otherwise, from the time of the satisfaction of the Mortgage." From 1977 to 1987, apparently because of the debtors' failure to do so, Jim Walter purchased insurance in the amount of $2,027.61 to protect its interest in the property. Although the mortgage did not specifically provide, the Court finds that this amount became part of the debtors' indebtedness to Jim Walter and is secured by the mortgage by virtue of the future advance clause. The future advance clause contemplated that insurance payments advanced by Jim Walter would become part of the secured debt upon which the debtors would be obligated to pay.

The debtors cannot avoid their obligation to maintain insurance on their property by construing the insurance debt to be unsecured which through their plan will receive no payment. Paragraph 7 of the mortgage provided that the debtors agreed to "keep all improvements insured against all loss or damage...." The payment of insurance was essential to protect Jim Walter's interest. Jim Walter, in assuming the insurance obligation when the debtors failed to do so, essentially allowed the debtors to remain in property upon which they had failed to perform their obligation to maintain insurance. The Court notes that a finding that the insurance advances to be part of the secured debt would not work a substantial hardship on the debtors since the Jim Walter claim is oversecured; the debt owed to Jim Walter by the debtors is considerably less than the value of the property, as assessed by the debtors.

Jim Walter's objection to plan and objection to amended plan of the debtors are

---

1. The provisions contained in the *Tolson* deed of trust were similar to the provisions of the mortgage between Jim Walter and the debtors. The pertinent provisions of the *Tolson* deed of trust stated:
   "(a) * * * and thus secure * * * the payment of any other or additional indebtedness owing by the borrower to lender * * *"
   "(b) [A]nd in further trust to secure the payment of any other or additional loan or loans made by lender to borrower * * * up to the time of foreclosure of this deed of trust."
   "(c) [A]nd in default of payment of installments of principal and interest * * * or nonpayment of insurance premiums, taxes, assessments or other charges," the trustee could sell the property.
   *Tolson v. Pyramid Life Ins. Co.*, 221 Ark. 492, 495, 254 S.W.2d 53, 55 (1953).

sustained. The debtors will be directed to amend their plan within ten days to provide for payment of a secured claim for Jim Walter which includes the $2,027.61 expenses advanced by Jim Walter for insurance premiums from 1977 to 1987.