Cite as 2020 Ark. App. 199

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-19-584

| | | |
|---|---|---|
| | | **Opinion Delivered:** March 18, 2020 |
| EQUITY BANK | APPELLANT | APPEAL FROM THE BOONE COUNTY CIRCUIT COURT [NO. 05CV-17-141] |
| V. | | |
| SOUTHSIDE BAPTIST CHURCH OF LEAD HILL, ARKANSAS, D/B/A BRAND NEW CHURCH; SHANNON O'DELL; SHAIN SATTERWHITE; J. CLIFFORD METHVIN; AND BRUCE MEDLEY | | HONORABLE JOHN R. PUTMAN, JUDGE

AFFIRMED |
| | APPELLEES | |

## MIKE MURPHY, Judge

Equity Bank appeals the order entered by the Boone County Circuit Court granting the appellees' motion for summary judgment applying proceeds from a sale of personal property held as collateral to a note held by Equity Bank. Equity Bank would have had the proceeds applied to a different note, and on appeal, it argues that the circuit court erred in interpreting Arkansas law as it applies to a cross-collateralization provision in its agreement with the appellees. We affirm.

Equity Bank filed this lawsuit on June 9, 2017, seeking to collect on two promissory notes made by the Southside Baptist Church of Lead Hill, Arkansas (Southside Baptist). In 2008, Equity Bank loaned Southside Baptist $2,600,000. This was secured by a mortgage on real property owned by the church (Note 1). Around 2012, the parties entered into a second agreement. In that agreement, Equity Bank loaned Southside Baptist a principal

amount of about $150,000, and that note was secured by the church's furniture, fixtures, inventory, and equipment (Note 2). Note 2 was also personally guaranteed by separate appellees Shannon O'Dell, Shain Satterwhite, J. Clifford Methvin, and Bruce Medley.

Southside Baptist eventually defaulted on both notes, and Equity Bank filed suit to foreclose, to recover and sell the collateral, and for judgment. The parties attended mediation and were able to resolve almost all the issues between them: the church deeded the real property to the bank, the church sold the collateral securing Note 2 for $55,000, and the parties agreed that the remaining debt associated with Note 2 is $55,000. Following mediation, the only outstanding issue between the parties was to which debt the $55,000 from the sale of the collateral securing Note 2 should be applied. That amount was held in escrow and is the subject of the remaining litigation.

Accordingly, Southside Baptist moved for summary judgment. In its motion, it argued that the $55,000 held in escrow should be applied to the Note 2 debt. Equity Bank responded, arguing that a cross-collateralization clause in the Note 2 agreement allowed it to apply the $55,000 to the Note 1 debt at its option, and it sought to have the $55,000 applied to Note 1.

After consideration, the circuit court found that the cross-collateralization clause in Note 2 was not clear enough to indicate that securing the Note 1 debt was within the contemplation of the parties when Note 2 was executed. The court granted Southside Baptist's motion for summary judgment and ordered that the proceeds from the sale of the collateral be applied to the Note 2 debt. Equity Bank appealed. On appeal, Equity Bank argues that the circuit court erred in granting Southside Baptist's summary-judgment motion.

2

Summary judgment is a remedy that should be granted only when there are no genuine issues of material fact to litigate and when the case can be decided as a matter of law. *Smith v. St. Paul Fire & Marine Ins. Co.*, 76 Ark. App. 264, 268, 64 S.W.3d 764, 767–68 (2001). Normally, we determine if summary judgment is proper by deciding whether evidentiary items presented by the moving party leave a material question of fact unanswered, viewing all evidence in favor of the nonmoving party. *Selrahc Ltd. P'ship v. SEECO, Inc.*, 2009 Ark. App. 865, at 3, 374 S.W.3d 33, 35–36. However, in cases such as this where the parties do not dispute the essential facts, we simply determine whether the moving party was entitled to judgment as a matter of law. *Id.*

Note 2 comprises a business-loan agreement, promissory note, commercial-security agreement, and four personal guaranties. The commercial-security agreement contains the cross-collateralization clause that is at issue. That clause reads in full as follows:

> CROSS-COLLATERALIZATION. In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of [Southside Baptist] to [Equity Bank], or any one or more of them, as well as all claims by [Equity Bank] against [Southside Baptist] or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of [Note 2], whether similar or dissimilar, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether [Southside Baptist] may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

Arkansas law provides that parties to a loan transaction may agree that a mortgage or security agreement given to secure a particular debt may also, by its terms, secure existing or future debt. *In re Dorsey Elec. Supply Co.*, 344 F. Supp. 1171 (E.D. Ark. 1972); *Hendrickson v. Farmers' Bank & Trust Co.*, 189 Ark. 423, 73 S.W.2d 725 (1934). When a mortgage is

3

given to secure a specific named debt, the security will not be extended to antecedent debts unless the instrument provides and identifies those debts intended to be secured in clear terms. *Hendrickson*, 189 Ark. at 423, 73 S.W.2d at 729.

Here, Equity Bank contends that the language "this Agreement secures all obligations, debts and liabilities, plus interest thereon, of [Southside Baptist] to [Equity Bank] . . . whether now existing or hereafter arising" clearly refers to Note 1. It argues that when Note 2 was executed, all parties to the transaction knew that Note 1 existed and that Southside Baptist was liable to Equity Bank for the same.

To support its position, Equity Bank calls our attention to the following three cases: *Dorsey Electric Supply Co.*, *supra*; *Hollan v. American Bank of Commerce & Trust Co.*, 168 Ark. 939, 272 S.W. 654 (Ark. 1925); and *In re Washington*, 2003 WL 22119519 (Bankr. E.D. Ark. 2003). However, neither *Dorsey* nor *Hollan* deals with antecedent debts,[1] and to the extent that the unpublished bankruptcy opinion carries any precedential value, which it does not, the pertinent clause identified the antecedent debt with more specificity than we are presented with here.[2]

---

[1]In *Dorsey*, the bank conceded before litigation that the later-executed note could not secure the earlier debt. *Dorsey*, 344 F. Supp. at 1172 ("Petitioner concedes that its Deed of Trust was not security for the antecedent indebtedness of $20,000.00."). In *Hollan*, the question presented to the court was whether a mortgage executed in 1920 could secure a loan executed in 1921. *Hollan*, 272 S.W. 654.

[2]The issue in *Washington* was whether car notes secured prior credit-card debt. The relevant language in the car notes was as follows: "[The security interest] also secures any other loans you have with the credit union now or in the future including any credit card loans and any other amounts you owe the credit union for any reason now or in the future." 2003 WL 22119519, at ★1. While the court found that the subsequent car notes secured the antecedent credit-card debt, it did so due to the specific "language contained in the Notes stating that collateral securing the Note also secures past loans including credit card loans." *Id.* at ★3.

Equity Bank would have us hold that the language "all obligations" "now existing" are "clear terms" sufficient to identify Note 1. We disagree. A debt created after the mortgage, being not yet in existence, may not in all cases be clearly indicated; whereas antecedent debts may always be definitely stated. *Hendrickson*, 189 Ark. 423, 73 S.W.2d at 729. For example, a phrase like "other indebtedness" in such a clause is usually treated as referring not to an antecedent debt but to one subsequently incurred, because a preexisting obligation can be referred to with specificity. *See, e.g.*, *id*. The reason is that mortgages, by the use of general terms, should not be extended to secure debts that the debtor did not specifically contemplate. *Id*. If Equity Bank had intended for the collateral securing the indebtedness on Note 2 to serve as additional security for Note 1, it had the opportunity to unambiguously identify Note 1 at that time. The circuit court properly granted Southside Baptist's motion for summary judgment.

Affirmed.

GLADWIN and SWITZER, JJ., agree.

*Watkins, Boyer, Gray & Curry, PLLC*, by: *Jennifer E. Gray* and *Andrew T. Curry*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Lance R. Miller*, *Stan Smith*, and *Megan D. Hargraves*, for appellee Southside Baptist Church of Lead Hill.

*Ragland Law Firm*, by: *Grant Ragland*, for appellees Bruce Medley and Shain Satterwhite.