Cite as 2022 Ark. App. 440

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CV-20-310

| | |
|---|---|
| FIRST NATIONAL BANK OF IZARD COUNTY | Opinion Delivered November 2, 2022 |
| APPELLANT | APPEAL FROM THE IZARD COUNTY CIRCUIT COURT [NO. 33CV-18-69] |
| V. | |
| OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY | HONORABLE HOLLY MEYER, JUDGE |
| APPELLEE | AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

The appellant, First National Bank of Izard County (the "Bank"), appeals an order from the Circuit Court of Izard County granting summary judgment in favor of appellee, Old Republic National Title Insurance Company ("Old Republic") and dismissing with prejudice the appellant's complaint for declaratory judgment. We affirm the circuit court's order granting summary judgment to Old Republic.

### I. *Background Facts*

The dispute between the Bank and Old Republic concerns two title insurance policies issued by Old Republic to the Bank. To assist in understanding the nature of this dispute, we set forth a summary of a complex business transaction between entities and individuals who are not parties to this cause of action but are relevant to this appeal. John Hardy ("Hardy") and Helen and George Bartmess (collectively, "the Bartmesses") were business

partners in a limited-liability company called B&H Resources, LLC ("B&H"). When the partnership dissolved in February of 2009, the Bartmesses sold their business interests to Hardy (the "B&H Transaction"). Hardy obtained a $445,997 loan from the Bank to facilitate the buyout. The Bartmesses owned real property located in Izard County, Arkansas, including a 377-acre tract known as "Phillips Corner" (the "Phillips Corner Property"), and this property, among several others, was transferred by the Bartmesses to Hardy as part of the B&H Transaction. The B&H Transaction was prolonged and protracted. Eventually, the Bartmesses and Hardy reached terms of agreement set forth in two documents that are essential to this appeal: (1) an "LLC Membership Interest Purchase Agreement" ("the LLC MIPA") that set forth the terms and conditions relative to the B&H Transaction and (2) a "Memorandum of LLC Membership Interest Purchase Agreement Affecting Real Estate and Rights Therein" ("the Memorandum"). The LLC MIPA contained a provision that created a reversionary interest in the Phillips Corner Property back to the Bartmesses in the event of certain conditions of noncompliance. Because of confidentiality, the LLC MIPA was not to be recorded in the Izard County land records. The Memorandum did not contain the above-referenced reversionary interest, but it did reference the LLC MIPA, stating that it "affects real estate and rights in real estate, the parties hereby enter into this memorandum and file it within the mortgage and conveyance records in and for Izard County, Arkansas." In addition, legal descriptions of several pieces of real property, including the Phillips Corner Property, were attached to the Memorandum, and the Memorandum further recited that the Bartmesses agreed to convey to B&H the Phillips Corner Property.

To complete the B&H Transaction, the Bank agreed to loan money to Hardy. Danny Moser ("Moser"), the Bank's CEO at the time, was the loan officer for the B&H Transaction. In this capacity, Moser undeniably received and was copied on most, if not all, of the correspondence concerning the B&H Transaction between the Bartmesses and Hardy, including the LLC MIPA and the Memorandum. Subsequently, the Bank made three loans. It first loaned Hardy $445,997 secured by a mortgage on a 636-acre tract of property conveyed by the Bartmesses to Hardy and B&H (this loan is not at issue in this appeal). The Bank issued a second loan in the amount of $55,000 ("the 55k Loan") secured by a mortgage dated February 12, 2009, on the Phillips Corner Property. Almost five months later, on July 9, 2009, it made a third loan to Hardy of $155,000 ("the $155k Loan") that was also secured by a mortgage on the Phillips Corner Property.

In connection with each loan and mortgage, the Bank purchased title insurance policies from Old Republic. Old Republic issued three separate title policies to the Bank covering the mortgages and securing the $455,997 loan, the $55k Loan, and the $155k Loan (the policies for the $55k and $155k loans are collectively referred to herein as "the Policies"). The Policies insured that the Bank's mortgage liens on the Phillips Corner Property were superior to other claims.

Because of animus between the Bartmesses and Hardy, the Bank agreed to serve as a host site for the closing of the B&H Transaction ("the Closing"). On February 12, 2009, the Bartmesses and Hardy, along with their counsel, appeared at the Bank, signing all agreements, notes, and mortgages, and completing all transfers of real estate necessary for

3

the B&H Transaction and the $55k Loan. Wilda Russell, a Bank employee, was present at the Closing; served as the witness and notary; and took possession of the Closing documents for recording. She mailed the Memorandum, along with other documents, including the Bank's mortgages and warranty deed for the Phillips Corner Property, to the Izard County Circuit Clerk to be recorded in the public land records. In so doing, Ms. Russell attached a note on the first document stating, "record in this order," then she put a number on each document to indicate the order. On February 23, 2009, the documents were recorded by the county clerk. The clerk filed the Memorandum four minutes ahead of the Bank's mortgages that encumbered the Phillips Corner Property. Once filed, the clerk returned the recorded documents back to Ms. Russell. She, however, did not check to see if they had been recorded in the appropriate order.

On July 8, 2009, the Bank and Hardy closed on the $155k Loan. In connection with this closing, Old Republic issued a title-commitment order on July 22, 2009. The order indicated that the only prior lien was the $55k Loan secured by mortgage filed February 23, 2009, with no priority interest, notation, or exclusion relating to the Memorandum filed of record on February 23, 2009.

In 2015, Hardy went into default on the loans, and the Bank commenced a foreclosure action in the United States District Court against Hardy, B&H, and Helen Bartmess (Helen).[1] Helen filed an answer asserting a superior interest in all property in

---

[1] At the time of the commencement of this proceeding, George Bartmess was deceased.

which the Bank held mortgages, including the Phillips Corner Property, by virtue of the Memorandum. Furthermore, she declared that the Bank had actual notice of her preexisting claim against the property as well as constructive notice of her claim at the time of the loan transactions.

In response, the Bank filed a claim for coverage and defense with Old Republic under the Policies. Old Republic refused to defend and denied the Bank coverage, citing the Policies' exclusions. Despite this refusal to defend, the Bank moved forward with the foreclosure proceeding. Ultimately, the Bank reached a settlement with Helen, conceding that her interest in the property—by virtue of the Memorandum and LLC MIPA—was superior to its two mortgages on the same property, and it released its interest in the Phillips Corner Property.

Subsequently, the Bank filed the underlying cause of action against Old Republic alleging breach of the Policies because of its failure to provide coverage; its failure to defend the Bank in the federal litigation; and its failure to pay the Bank's damages suffered by the loss of its security interest to the property in question. Old Republic counterclaimed, seeking a declaration from the circuit court that its denial of coverage was proper under the express exclusions of the Policies.

Both parties filed competing summary-judgment motions. In so doing, each party agreed that no material issue of fact remained, and each party argued that it was entitled to judgment as a matter of law. After conducting a hearing on the motions, the circuit court entered summary judgment in favor of Old Republic. In its judgment, the court found that

no genuine issues of material fact were in dispute. The court further found the following facts undisputed: (1) the Bank made two loans to Hardy secured by mortgages on the Phillips Corner Property; (2) the Closing of the B&H Transaction, transfers of real estate, and signing of agreements, notes, and mortgages were done at the Bank's office; (3) Danny Moser, the Bank's CEO and the loan officer for the B&H Transaction, was aware of the B&H Transaction negotiations in that he received and was copied on most, if not all, correspondence prior to the Closing; (4) the Bank was in possession of all relevant documentation, including the Memorandum and the LLC MIPA; (5) though in possession of all relevant documents, Moser made the conscious decision not to read them; (6) a Bank employee, Wilda Russell, was present at the Closing, served as a witness, and notarized the documents; (7) Russell sent the Memorandum, mortgages, and warranty deed to the Izard County Circuit Clerk for recording; (8) the Memorandum was filed four minutes ahead of the Bank's mortgages thus giving the Memorandum priority; (9) the recorded documentation was sent back to the Bank; and (10) the Bank did not review the documents to ensure they were recorded in the correct order. From these undisputed facts, the court found that an exclusion to the Policies applied, granted summary judgment to Old Republic, denied the Bank's motion, and dismissed its complaint. Subsequently, the Bank filed a motion for new trial, which was not ruled on by the circuit court; thus, it was deemed denied. The Bank filed timely notices of appeal.

II. *Standard of Review*

The Bank appeals the circuit court's order granting summary judgment. When a party appeals a grant of summary judgment, we ordinarily examine the record to determine if genuine issues of material fact exist. *May v. Akers-Lang*, 2012 Ark. 7, 386 S.W.3d 378. We do so because summary judgment may be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Cannady v. St. Vincent Infirmary Med. Ctr.*, 2012 Ark. 369, 423 S.W.3d 548. However, when parties file cross-motions for summary judgment, our standard of review is different. When parties file cross-motions for summary judgment, as was done in this case, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. When the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Hobbs v. Jones*, 2012 Ark. 293, 412 S.W.3d 844.

In deciding issues of law, our standard of review is de novo. *State v. Cassell*, 2013 Ark. 221, at 4–5, 427 S.W.3d 663, 666 (citations omitted). "De novo review means that the entire case is open for review." *Certain Underwriters at Lloyd's, London v. Bass*, 2015 Ark. 178, at 9, 461 S.W.3d 317, 323 (citations omitted). Herein, we are tasked with the interpretation of contracts—the Policies. We interpret contracts under the following standard of review:

> The first rule of interpretation of a contract is to give to the language employed the meaning that the parties intended. In construing any contract, we must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. The best construction is that which is made by viewing the subject of the contract, as the mass of mankind would view it, as it may be safely assumed that such was the aspect in which the parties themselves viewed it. It is also a well-settled rule in construing a contract that the

7

intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement.

*Alexander v. McEwen*, 367 Ark. 241, 244, 239 S.W.3d 519, 522 (2006) (quoting Coleman v. Regions Bank, 364 Ark. 59, 65, 216 S.W.3d 569, 574 (2005) (internal citations omitted).

### III.  *Points on Appeal*

On appeal, the Bank argues the following:  (1) the circuit court erred by failing to address or make findings regarding Old Republic's constructive notice of the Memorandum; (2) Old Republic failed to prove actual knowledge on the part of the Bank as to a defect in title; therefore, the Policies apply; (3) the circuit court's "best position" and "notice to inquire further" analysis is not supported by case law; thus, it was erroneous; (4) the court's determination that Moser and the Bank had "actual notice" of the Memorandum was not established by summary judgment and therefore constitutes a contested issue of fact; (5) the circuit court failed to make any findings concerning the pleadings in the federal lawsuit with regard to Old Republic's duty to defend; and (6) attorney's fees are not available to Old Republic in this action.

### IV.  *Discussion*

Herein, the circuit court granted judgment to Old Republic based on competing motions for summary judgment. Because Old Republic and the Bank both filed motions for summary judgment, they essentially agreed that summary judgment is an appropriate means of resolving this case. Our review is limited to whether the circuit court erred in its conclusion of law that the coverage exclusion in the Policies was properly applied.

### A.  The Paragraph 3(a) Policy Exclusion

Both of the Policies contained identical exclusion provisions listed in paragraph 3(a). The exclusionary provisions state:

> The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damages, cost, attorneys' fees or expenses which arise by reason of:
>
> 3. Defects, liens, encumbrances, adverse claims or other matters:
> (a) created, suffered, assumed, or agreed to by the Insured Claimant[.]

Old Republic denied the Bank coverage citing paragraph 3(a). In its motion for summary judgment, Old Republic contended that the terms of the Memorandum and the LLC MIPA were disclosed to the Bank, and these documents were in the possession of the Bank prior to the Closing. It further contended that the Bank's handling and recording of the Memorandum, along with the insured's mortgages, resulted in the Memorandum being recorded ahead of the mortgages. Old Republic argued, on the basis of these undisputed facts, that its decision to deny coverage under paragraph 3(a) was justified. The circuit court agreed and held that Old Republic properly applied the paragraph 3(a) exclusion. Specifically, the court declared that pursuant to Arkansas law the Bank "created, suffered, assumed or agreed to" the defects in title.

Our court has previously reviewed this language "created, suffered, assumed, or agreed to," within the meaning of the exclusion of coverage under a title-insurance policy, concluding that the word "suffered" is synonymous with "permit" and implies a power in the insured to prohibit the act giving rise to the defect. *Bourland v. Title Ins. Co. of Minn.*, 4 Ark. App. 68, 627 S.W.2d 567 (1982).

9

Having reviewed the paragraph 3(a) exclusion in the Policies and the relevant caselaw interpreting the terms outlined in the exclusion, we find no error in the circuit court's ruling. We are not persuaded by the Bank's argument that for the paragraph 3(a) exclusion to apply, some willful intent on its part, as the insured, must be present. The Bank argues that *Bourland* limits the exclusion to cases in which all of the following are true: (1) the insured party has actual knowledge of the defect; (2) the knowledge is not possessed by the insurer; and (3) the actual knowledge on the part of the insured is willfully withheld. We disagree.

Admittedly, we held in *Bourland* that the facts there did not support a denial of coverage under the insurance policy exclusions because the appellant "had nothing to do with the execution or recording of the deed and had no power to prohibit it." *Id.* at 74, 627 S.W.2d at 571. Such is not the situation in this case.

It is undisputed that in the weeks prior to the Closing, the terms of the Memorandum, the LLC MIPA, and the additional documents related to the partnership dissolution and the real estate transactions were shared with the Bank. The Bank received a fax dated January 26, 2009, containing a letter between counsel for Hardy and the Bartmesses containing the following:

> Finally, I have not done this yet, but I think for both of our clients' interest, that we need to either record the LLC Buy-Sell Agreement, or else prepare a memorandum of the Agreement where we include the provisions from the agreement that affect the property.

Here, the Bank was involved in the B&H Transaction for months and was informed by letter of the purpose of the Memorandum. Furthermore, a Bank employee was present for the Closing, notarized the documents, and handled the recording of the Memorandum, deed,

10

and mortgages. Even after the documents were recorded, they were returned to the Bank. Thus, the facts herein are unlike the facts in *Bourland* in that, here, the Bank had within it the power to prohibit the Memorandum from having priority over its mortgages.

We are not persuaded that our decision in *Bourland* requires some willful intent on the part of the insured. In addition, as will be discussed below, this is not a situation where the circuit court held that the Bank's knowledge alone supported Old Republic's denial of coverage; therefore, willful intent on the part of the Bank was not required for the paragraph 3(a) exclusion to apply.

Accordingly, we find no error in the circuit court's finding that the undisputed facts establish that the Bank could have prohibited and prevented the claim from arising; therefore, pursuant to Arkansas law, the defect in title was "created, suffered, assumed, or agreed to" by the Bank, and coverage was properly denied under paragraph 3(a) of the Policies.

### B. Actual and Constructive Knowledge

The Bank's first, second, and fourth arguments all center on the issue of knowledge. In fact, the Bank expended a substantial portion of its brief discussing the issue of knowledge; more specifically, who did or did not have knowledge—either actual or constructive—of the contents of the Memorandum, and what effect such knowledge, or lack thereof, should have had on the circuit court's ruling. We are not persuaded that these arguments are germane to the issue presented on appeal.

The Policies contained two separate exclusions in paragraph 3: 3(a) and 3(b). As previously discussed, paragraph 3(a) excludes "[d]efects, liens, encumbrances, adverse claims" that were "created, suffered, assumed, or agreed to" by the insured. Paragraph 3(b) excludes "[d]efects, liens, encumbrances, adverse claims . . . not Known to the Company, not recorded in the Public Records at Date of Policy but known to the Insured Claimant." Giving this contractual language the meaning that the parties intended, we hold that knowledge, either actual or constructive, is immaterial to the paragraph 3(a) exclusion; thus, it is unnecessary for this court to discuss the merits of such.

## C. "Best Position" and "Notice to Inquire Further"

The Bank argues that it was erroneous for the circuit court to put a duty on it to ensure clear title because the burden of identifying defects in title belonged to Old Republic, and furthermore, the Bank was entitled to rely on Old Republic's "search, opinion, and guarantee." Specifically, the Bank contends that the circuit court's "best position" analysis and its statement that the Bank had a "notice to inquire further" were erroneous because it was under no duty to identify possible defects in title. First, we note that the circuit court did not engage in a "best position" analysis in its order; therefore, that argument is disregarded on appeal. Second, the circuit court's statement that the facts warranted the Bank's further inquiry into the terms of the Memorandum was not the court imposing a duty on the Bank to identify potential defects in title; rather, the court was merely establishing that the Bank could have prevented the claim from arising under the established precedent in *Bourland*. For this reason, we find no merit to this argument.

12

## D. Duty to Defend

The Bank argues that Old Republic had a duty to tender a defense in the federal proceedings and, furthermore, that the circuit court erred by not making a finding concerning the pleadings in the federal lawsuit. In response, Old Republic maintains that the circuit court's legal findings were based on precedent that where no policy coverage exists, there is no duty to defend.

The circuit court held that "[o]n these facts, the 3(a) Exclusion was properly applied by Old Republic, and [the Bank's] claims made on both of the Policies for indemnity and defense were properly denied." The supreme court has held that the paragraph 3(a) exclusion precludes an insurance company from paying for losses an insured inflicts on itself. *Mattson v. St. Paul Title Co. of the S.*, 277 Ark. 290, 641 S.W.2d 16 (1982). Because we find no error in the circuit court's holding that the Bank's loss fell within the paragraph 3(a) exclusion, it follows that Old Republic had no duty to defend the Bank. Therefore, the circuit court did not err by failing to make a finding concerning the pleadings in the federal case.

## E. Attorney's Fees

The Bank argues "out of caution" that the circuit court's determination of Old Republic's right to attorney's fees was not in compliance with the requirements of applying for such fees and, furthermore, that fees are not available in this action.

In its final judgment, the circuit court stated that as the prevailing party, Old Republic "is entitled to petition the Court for an award of reasonable attorney's fees within fourteen

13

(14) days of the entry of this Judgment." Consequently, no decision was made by the circuit court on attorney's fees. Because this court is limited to reviewing a ruling or an order of a lower court, we are precluded from addressing the merits of this challenge on appeal. *Ozark Mountain Reg. Pub. Water Auth. v. Ark. Att'y Gen.*, 2020 Ark. App. 180, 598 S.W.3d 864.

## V. *Conclusion*

We find that Old Republic is entitled to judgment as a matter of law; therefore, the order granting summary judgment is affirmed.

Affirmed.

ABRAMSON and BROWN, JJ., agree.

*Jeremy B. Lowrey*, for appellant.

*Dover Dixon Horne PLLC*, by: *Monte Estes*, for appellee.

14