Cite as 2024 Ark. App. 165

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-22-671

| | |
|---|---|
| | Opinion Delivered March 6, 2024 |
| STEVE MAULDIN, JIMMY MAULDIN, AND VIRGINIA MAULDIN | |
| APPELLANTS | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CV-20-42] |
| V. | |
| | HONORABLE CHARLES E. CLAWSON, JR., JUDGE |
| CENTENNIAL BANK | |
| APPELLEE | AFFIRMED |

**N. MARK KLAPPENBACH, Judge**

Steve Mauldin, Jimmy Mauldin, and Virginia Mauldin appeal from the Faulkner County Circuit Court's decree of foreclosure and order granting summary judgment to Centennial Bank. We affirm.

In April 2020, Centennial filed a second amended complaint for foreclosure against appellants as well as Randy Mauldin, Sheila Mauldin, and J's Investments, Inc.[1] The complaint set out six counts involving separate promissory notes. Count 6 involved the first loan made. On August 4, 2015, Randy signed a $25,000 promissory note with Centennial, and Randy, Sheila, and appellants signed a mortgage granting Centennial a mortgage lien against real property at 6 Fair Oaks Circle in Conway. The mortgage included a cross-

---

[1]The latter three defendants did not appeal.

collateralization clause stating that "[i]n addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing of hereafter arising, whether related or unrelated to the purpose of the Note. . . ." Centennial subsequently made more loans to Randy in 2017 and 2018, which he failed to repay, and those loans became the subject of other counts in the second amended complaint. Randy, Sheila, and appellants all signed modifications of the 2015 mortgage in 2017, 2018, and 2019 extending the mortgage date.

In October 2020, the circuit court entered partial summary judgment in favor of Centennial on all counts in the complaint except count 6 and ordered the real property secured in the 2017 and 2018 loans foreclosed. Following the foreclosure sale, those loans were not paid in full, which created deficiency balances. In February 2022, Centennial moved for summary judgment as to count 6 and argued that the cross-collateralization clause allowed Centennial to satisfy, in part, the deficiency balances when it foreclosed on the Fair Oaks property. Appellants filed a countermotion for summary judgment arguing that the cross-collateralization clause was invalid and that Centennial had failed to establish the enforceability of the debt in count 6.

After a hearing, the court granted summary judgment to Centennial and entered a foreclosure decree. The court found that the cross-collateralization provision in the 2015 mortgage was valid and effective as to the 2017 and 2018 promissory notes; accordingly,

2

Centennial's lien on the Fair Oaks property was found to secure the 2015 indebtedness and the deficiency balances under the 2017 and 2018 promissory notes. Appellants filed a timely notice of appeal from this order. On appellants' motion, the court entered a stay pending appeal and approval of supersedeas. The court later, however, entered an order vacating this order and finding that the defendants had failed to post bond as required prior to the foreclosure sale. That same day, the court entered an order confirming the sale.

Prior to reaching the merits of the appeal, we must first address Centennial's motion to dismiss the appeal. Centennial argues that the appeal should be dismissed for two reasons: (1) appellants failed to file a notice of appeal from the circuit court's order confirming the foreclosure sale; and (2) appellants voluntarily satisfied the decree. We disagree.

Regarding the notice of appeal, Centennial cites *Budget Tire & Supply Co. v. First National Bank*, 51 Ark. App. 188, 193, 912 S.W.2d 938, 941 (1995), which states that a "decree confirming a foreclosure sale is also a separate, final, and appealable order, and a notice of appeal must also be given within thirty days of that decree." This case also holds that a decree granting foreclosure and placing the court's directive into execution is final and appealable, and Centennial does not dispute that the foreclosure decree here is final. On appeal, appellants allege error in the foreclosure decree. If they were also alleging error in the sale, then a notice of appeal should have also been given within thirty days of the order confirming the sale; however, because they are alleging error only in the foreclosure decree, their arguments are properly before us pursuant to their timely notice of appeal from the foreclosure decree. *See Nat'l Home Ctrs., Inc. v. First Ark. Valley Bank*, 366 Ark. 522, 237

3

S.W.3d 60 (2006) (deciding appellant's appeal from foreclosure decree from which notice of appeal was filed but declining to address arguments regarding the foreclosure sale due to the failure to file a notice of appeal from the order confirming sale).

Centennial argues that appellants' appeal is moot under the voluntary-payment doctrine because appellants could have obtained a stay, but they failed to satisfy the bond requirement. If the payment of a judgment is voluntary, the case is moot. *City of Little Rock v. Cir. Ct. of Pulaski Cnty.*, 2017 Ark. 219, 521 S.W.3d 113. In determining whether a payment was voluntary or involuntary, one of the most important factors to consider is whether the payor was able to file a supersedeas bond at the time the judgment was satisfied. *Id.* However, an additional factor we must consider is the fact that the judgment was only satisfied as the result of execution on a judgment. *See Reynolds Health Care Servs., Inc. v. HMNH, Inc.*, 364 Ark. 168, 217 S.W.3d 797 (2005). Given that the satisfaction of the judgment in *Reynolds* was not a purely voluntary act on the appellant's part but was instead the result of a writ of execution, the supreme court declined to dismiss the appeal. Here, the judgment was satisfied by the sale of land at a public auction at the courthouse. This is not in the nature of a voluntary satisfaction of debt; accordingly, we decline to dismiss the appeal.

Turning to the merits of appellants' appeal, we dispose of their first three arguments together. Appellants argue that (1) Centennial's second amended complaint failed to sufficiently plead facts asserting that it was entitled to a judgment for deficiency balances pursuant to the cross-collateralization clause; (2) the amount that Centennial can recover

4

should be limited to the amount requested in relation to count 6 of the complaint, which did not include deficiency balances; and (3) the judgment must be set aside due to Centennial's failure to produce the original 2015 promissory note. Although appellants raised these arguments at the summary-judgment hearing, they did not obtain a ruling on them. If a party raises an issue in response to a motion for summary judgment but fails to obtain a ruling on it, review of that issue is precluded on appeal. *Culhane v. Oxford Ridge, LLC*, 2009 Ark. App. 734, 362 S.W.3d 325. Accordingly, we hold that these arguments are not preserved for our review.

For their last point, appellants argue that the circuit court erred in enforcing the cross-collateralization clause against the 2017 and 2018 loans when those debts were not identified in the 2019 modification of the 2015 mortgage. This argument was ruled on with the circuit court finding that the cross-collateralization clause was valid and effective as to the 2017 and 2018 promissory notes.

When parties file cross-motions for summary judgment, as was done in this case, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. *First Nat'l Bank of Izard Cnty. v. Old Republic Nat'l Title Ins. Co.*, 2022 Ark. App. 440, 655 S.W.3d 108. When the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Id.* In deciding issues of law, our standard of review is de novo. *Id.*

Arkansas law provides that parties to a loan transaction may agree that a mortgage or security agreement given to secure a particular debt may also, by its terms, secure existing or

5

future debt. *Equity Bank v. Southside Baptist Church of Lead Hill*, 2020 Ark. App. 199, 599 S.W.3d 133. When a mortgage is given to secure a specific named debt, the security will not be extended to antecedent debts unless the instrument provides and identifies those debts intended to be secured in clear terms. *Id.* Appellants contend that the 2017 and 2018 debts were in existence when the 2015 mortgage was modified in 2019; thus, the mortgage must have identified those debts in order for the cross-collateralization clause to apply. Centennial argues that the sole purpose of the "modification of mortgage" executed in 2019 was to extend the mortgage, and it did not create a new mortgage or add or remove any collateral that secured the mortgage. The document states, "Except as expressly modified above, the terms of the original Mortgage shall remain unchanged and in full force and effect and are legally valid, binding, and enforceable in accordance with their respective terms." The modification incorporates a "change in terms agreement," which states that the change in terms is the renewal of the loan and lists a maturity date of August 4, 2021. Appellants cite no authority for their contention that the modification was required to identify debts that arose after the original mortgage. Because the latter debts were not in existence when the 2015 mortgage was executed, we hold that the circuit court properly applied the cross-collateralization clause. We affirm the order granting summary judgment.

Affirmed.

HIXSON and BROWN, JJ., agree.

*Russel O. Shanahan*, for appellants.

6

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*; and *Peel Law Firm, P.A.*, by: *John R. Peel*, for appellee